UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | CRIMINAL NO. 03-10366-PBS |
| ) | |
| GIRARD LAFORTUNE ) | |

UNITED STATES'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO SEVER

The United States hereby opposes the Motion to Sever filed by Defendant Girard LaFortune ("LaFortune") in the above-captioned matter. By his motion, LaFortune requests that Counts One and Four of the First Superseding Indictment be tried separately from Counts Two and Three, on the grounds that a joint trial of the four counts allegedly would not require admission of overlapping evidence and would prejudice him.

As will be discussed more fully below, the United States submits that under the relevant case law and Federal Rule of Criminal Procedure 8(a), joinder of all four counts is permissible because they all are of the same or similar character and are closely connected to each other as part of a common scheme or plan. In addition, Defendant's assertion that the United States would need to admit little overlapping evidence in separate trials is patently incorrect. Finally, LaFortune has not demonstrated a strong showing of actual prejudice necessary under Federal Rule of Criminal Procedure 14 to sever the offenses from one another. For all of these reasons, LaFortune's Motion should be denied.

**FACTS**

LaFortune is a recidivist sex offender, with prior convictions in the Commonwealth of Massachusetts for contact offenses against his own children, and prior federal convictions in the

District of Massachusetts for child pornography crimes. In the instant case, a federal grand jury returned the First Superseding Indictment charging LaFortune with four crimes related to trafficking in and possession of child pornography on March 31, 2004.

Prior to his indictment, LaFortune had become the target of an undercover investigation originating at the Tuscon, Arizona Resident Agency of the FBI. In an undercover capacity FBI Special Agent Kari Morales Marsh was invited via email to join several Yahoo! Groups that provided access to internet space for individuals interested in trafficking in child pornography images, including a group called "Baldy3." Agent Marsh identified several individuals in these Yahoo! Groups who had transmitted child pornography to the Group. One such individual identified as having posted child pornography images in the "Baldy3" group used the Yahoo! user name of "davyjones20002000." Davyjones20002000 posted six images into a photo album named "holly n rim" in the "Baldy3" group. Davyjones20002000 also posted an e-mail message to the "Baldy3" group. The email message was entitled "as promised" and said, "added a few pics in folder . . Holly n rim, they my two favorites, will post more later, please post fills if u have."

A trail of subpoenas ultimately identified the Yahoo! user davyjones20002000 to be LaFortune. Yahoo! provided information regarding the IP address of davyjones20002000's most recent connections to Yahoo! The IP address Yahoo! had provided was owned by Comcast. Comcast's subpoena response identified LaFortune as the subscriber for residential high speed internet access in Billerica, Massachusetts, who matched the IP address. Agent Marsh subsequently checked the Massachusetts Sex Offender registry for LaFortune, and found that he was a registered sex offender. Based on her observation of criminal violations by LaFortune in

the Yahoo! Group and the identifying information she had obtained, Agent Marsh sent an investigative lead to the FBI Boston Field Office, which continued the investigation.

Magistrate Judge Dein issued a search warrant for the LaFortune residence on October 27, 2003. The warrant was executed on October 29, 2003. During the execution of the warrant, LaFortune agreed to be interviewed by FBI agents present at the scene. During the interview, he told the agents that he used the name davyjones20002000@yahoo.com to surf the internet. He was also shown several of the pictures from the "holly n rim" photo album from the Yahoo! Group. He admitted to downloading the pictures to his computer from somewhere on the internet and then subsequently uploading them to a different location on the internet. He could not remember the specifics of where he found the images or where he posted them, but he recalled first viewing the images approximately eight months prior to the search and posting them on the internet approximately five or six months prior to the search.

During the interview, LaFortune informed the agents of his prior conviction in Massachusetts for the sexual assault of his daughter. He also informed them of his arrest by postal inspectors and federal imprisonment, which he stated had occurred shortly after his release from state prison. In this context, he also told the Agents that he is sexually attracted to girls between the ages of 10 and 14, that he currently satisfies these urges by viewing sexually explicit photographs of young girls he obtains via the internet, and that he will need lifetime therapy.

Agents seized one computer during the search. In addition they seized a large cache of computer media, including several different types of computer disks. Over 160 disks were found hidden in the drop ceiling of LaFortune's apartment. Included among these disks was one labeled "Rim Holly." The Rim Holly disk contained approximately 125 images of child

pornography, including those images that were posted to the Yahoo! Group Baldy3 in the photo album called "holly n rim." The National Center for Missing and Exploited Children reviewed the contents of the Rim Holly disk and determined that many of the images were consistent with Holly Series and Rim G series of known child pornography images. This identification means that the children in the pictures are actual child victims previously identified by law enforcement. All totaled, there were over 10,000 images stored on computer media hidden in LaFortune's ceiling. The images featured children of all ages, from infants to teens, engaged in a variety of behavior, from extreme sado-masochistic sexual torture to fully clothed modeling.

Forensic analysis of LaFortune's computer hard drive revealed more images of child erotica and child pornography, and also revealed some of the means by which LaFortune obtained these images. The analysis shows that LaFortune was sophisticated enough to set up projects on a software program called Newsrover to automatically visit newsgroups dedicated to child pornography and download images to his computer. Analysis of the hard drive ties LaFortune to use of the moniker "Davyjones." It also reveals that he was actively chatting online with others interested in child pornography and child sexual abuse.

Based on the foregoing, the grand jury returned the four-count First Superseding Indictment against LaFortune. Count One charges LaFortune with violating 18 U.S.C. § 2252(a)(1) and (b)(1) by transporting, and attempting to transport, child pornography images in interstate commerce on or about May 21, 2003. Count Two charges LaFortune with receiving child pornography that had been transported in interstate commerce on or about between May 1, 2003, and October 29, 2003 in violation of 18 U.S.C. § 2252(a)(2). Count Three charges LaFortune with possessing child pornography that had been transported in interstate commerce

on or about October 29, 2003, in violation of 18 U.S.C. § 2252(a)(4) (B).  Finally, Count Four charges LaFortune with causing to be "made, printed and published, a notice and advertisement seeking and offering to receive, exchange, buy, produce, display, distribute, and reproduce" child pornography images, and of transporting the notice in interstate commerce on or about May 21, 2003, in violation of 18 U.S.C. § 2251(d).

Argument

A.  The joinder of the four child pornography charges contained in the First Superseding Indictment is permissible under Rule 8(a).

It is well-established that multiple offenses may be joined in the same indictment, "if the charges are 'of the same or similar character....'" United States v. Taylor, 54 F.3d 967, 973 (1st Cir. 1995)(quoting Fed. R. Crim. P. 8(a)).  "Similar" is not tantamount to "identical;" instead, "similarity must be analyzed in terms of how the government viewed its case at the time of the indictment." United States v. Edgar, 82 F.3d 499, 503 (1st Cir.), cert. denied 519 U.S. 870, (1996); see also United States v. Melendez, 301 F.3d 27, 35 (1st Cir. 2002).  Indeed, Rule 8(a) is generously construed in favor of joinder.  United States v. Randazzo, 80 F.3d 623, 627 (1st 1996).  In determining whether separate offenses may be joined in the same indictment, the First Circuit  has outlined several factors.  These factors include:

> [W]hether the charges are laid under the same statute, whether [the charges] involve similar victims, locations, modes of operations, and the time frame in which the charged conduct occurred.

Taylor, 54 F.3d at 973.  LaFortune does not cite any of this black-letter law from the First Circuit in his motion, and he simply cannot overcome its application to the facts of his case.  Here, all four of the offenses with which LaFortune is charged are extremely similar in nature and

rightfully are joined. All four counts fall under Chapter 100 of the criminal code, relating to the sexual exploitation of children (indeed, the first three Counts all are under the same statute, 18 U.S.C. § 2252), all involve transporting, receiving, possessing, and posting notices about child pornography by means of the internet and the same personal computer, all involve numerous child victims, all took place in LaFortune's apartment in Billerica, and all occurred within the same six month time frame. Indeed, the Fourth offense is clearly and inextricably related to the first three, in that it charges LaFortune with posting a notice or advertisement from his apartment in Billerica that apprised members of the online community of which he was a part, "Baldy3," that he was making the child pornography charged in Count One available to others in his photo album, and that he was seeking to receive and possess additional images of child pornography.

United States v. Hersh, 297 F.3d 1233 (11th Cir. 2002), one of the few published cases to address joinder of offenses in the child pornography context, upholds joinder of far more disparate child exploitation crimes than those charged in the instant First Superseding Indictment. In Hersh, the Eleventh Circuit Court of Appeals held that it had been proper for the district court not to sever counts of conspiracy to travel in foreign commerce to have sex with a minor, transportation of a minor in interstate commerce for illegal sexual purpose, and child pornography trafficking and possession charges that did not involve victims of the travel offenses. The court determined that these counts were similar in that the charged offenses "charge Hersh with child molestation and child pornography . . . involving the extraordinary mistreatment of children." Id. at 1242.

Here, the facts in support of joinder are even more compelling than those upheld by the Eleventh Circuit in Hersh. All of the charges against LaFortune are strictly related to activities

6

involving the use of his home computer to collect, post and advertise child pornography. All the activities occurred in a time period of six months or less. These counts clearly meet the test for joinder and should not be severed.[1]

B.  <u>LaFortune's claim that trial of Counts One and Four of the First Superseding Indictment separately from Counts Two and Three will not involve admission of identical evidence is patently false</u>.

LaFortune spends a large portion of his motion attempting to justify severance on the ground that it will not hamper the court's efficient administration of justice because the two proposed trials -- one on Counts One and Four of the First Superseding Indictment and the other on Counts Two and Three –- will not require admission of overlapping evidence. This assertion is patently false. The two trials would require admission and repetition of large quantities of identical evidence.

In order to prove the child pornography crimes of transportation, receipt, and possession the United States bears the burden of proof on elements common to the three offenses: (1) that the defendant acted knowingly; (2) that the pictures in question are of real people; (3) that the pictures show minors; and (4) that the minors in the pictures are engaged in sexually explicit conduct.[2] In order to prove these elements, the United States must present evidence relevant to

---

[1] Even if the court were to find that these counts were not properly joined, severance is the most extreme remedy available to the court. Remedies other than severance are available, such as curative instructions. <u>United States v. Leichter</u>, 160 F.3d 33, 36 & n.4 (1st Cir. 1998).

[2] The United States need not prove these specific elements for Count Four of the First Superseding Indictment, charging that LaFortune "made, printed and published, a notice and advertisement seeking and offering to receive, exchange, buy, produce, display, distribute, and reproduce" child pornography images, and of transporting the notice in interstate commerce on or about May 21, 2003 in violation of 18 U.S.C. § 2251(d), however, all of the issues discussed herein relating to child pornography and computer use are equally relevant to this charge.

the defendant's state of mind as well as evidence related to the images themselves.

With respect to the images, unless stipulations are agreed to in advance of trial, the United States may be required to call as witnesses the law enforcement officers who were involved in the investigation of the child sexual abuse depicted in the images to testify that they have met the child. In the alternative, in cases where such law enforcement officers are not available to testify, other expert testimony would be used to explain to the jury why the images in question depict real minor victims, rather than computer-generated animation. Identical proof on these issues could be used for each of counts One through Four. Although there were over 10,000 images seized from LaFortune, as a practical matter, the United States would not be inclined to present law enforcement or expert witnesses to address all 10,000 images. Not only would this overwhelm the available law enforcement resources, it would not be appropriate to show a jury such a large quantity of child pornography.

Indeed, to support a finding of guilt on a violation of 18 U.S.C. §§ 2252(a)(1), (a)(2) or (a)(4)(B), the United States needs only present proof with respect to a single image. Unless new defenses are raised, or new motions for the exclusion of evidence are filed, the United States could easily make its case on Counts One through Four by admitting all of the same pictures – the images from the single disk "Rim Holly," which contained the pictures posted to the Yahoo! Group and was found hidden in LaFortune's drop ceiling. These also are the images for which LaFortune posted the notice/advertisement that is charged in Count Four.

Several other issues of proof in the four charged counts are also extremely similar and will likely require admission of identical evidence. A large element of any child pornography case relates to a defendant's state of mind, specifically what he knew. For example: Did he know

he was collecting and disseminating actual child pornography over the internet; did he know how to use his computer; was he operating online as davyjones20002000?

Although the United States will not recite all of the potential evidence in the case here, there are some important common evidentiary elements pertaining to LaFortune's knowledge that will likely be used for all four counts of the indictment. Evidence of his LaFortune's prior convictions for molesting his own children and for trafficking in child pornography (including for advertising child pornography) will be offered under Federal Rule of Evidence 404(b) to show absence of mistake or accident and to show his intent to obtain and disseminate images of real children. Although, as mentioned above, the United States will not seek to admit all of the child pornography images, the fact that LaFortune possessed such an extensive collection of child pornography at the time of the search of his home will also be used to show that his internet activity was extensive, long-term and intentional. Forensically recovered computer information will also be relevant to show state of mind and control of the computer. For example, forensically recovered data shows LaFortune chatting with like-minded individuals about gaining access to actual children. This is another piece of evidence that tends to show LaFortune's inclination to collect and share images of real children. Forensic evidence also shows extensive use of the name davyjones and the various means by which LaFortune was collecting his child pornography.

In sum, whole classes of identical evidence addressing specific child victims, regarding LaFortune's state of mind, and showing operation and control of the computer would need to be admitted in each of two trials if the charges here were severed.

C.  LaFortune has not demonstrated a strong showing of actual prejudice necessary under Rule 14 to support severing the offenses charged in the indictment.

In instances where joinder is permissible under Rule 8(a), the trial court judge may sever the counts "[i]f it appears that a defendant...[will be] prejudiced by a joinder of offenses...in an indictment." United States v. Baltas, 236 F.3d 27, 33 (1st Cir.)(quoting Fed. R. Crim. P. 14), cert. denied 532 U.S. 1030 (2001). Moreover, the defendant has the burden and must demonstrate that an alleged misjoinder will "'likely deprive [the defendant] of a fair trial.'" United States v. Burgos, 254 F.3d 8, 14 (1st Cir. 2001)(quoting United States v. Bartleho, 129 F.3d 663, 678 (1st Cir. 1997)). However, it is well-settled in this Circuit that in meeting his burden, the defendant must make a strong showing of prejudice to prevail in severing his counts. United States v. Jordan, 112 F.3d 14, 16 (1st Cir.)(quoting United States v. Gray, 958 F. 2d 9, 14 (1st Cir. 1992)), cert. denied 522 U.S. 923 (1997).

The First Circuit has been quick to point out on numerous occasions that "there is always some prejudice in any trial where more than one offense is tried together – but such 'garden variety' prejudice, in and of itself, will not suffice." See United States v. Baltas, 236 F.3d at 34 (quoting United States v. Boylan, 898 F.2d 230, 246 (1st Cir. 1990)); see also United States v. Taylor, 54 F.3d at 974 (spillover is standard fare whenever counts involving discrete incidents are linked in a single indictment).

Furthermore, the First Circuit has repeatedly stated that spillover arguments offered by defendants, "such as if the jury found the defendant guilty of A, that alone would lead to the conclusion [he or she] was guilty of B -- without more, are insufficient to require severance." United States v. Edgar, 82 F.3d at 505 (citing Taylor, 54 F.3d at 973). To limit spillover

10

prejudice, the First Circuit has stated that trial judges can and should instruct the jury on the separateness of the counts and make it clear that the jury must consider each charge on its own merits. Taylor, 54 F.3d at 974; see also Baltas, 236 F.3d at 33.

Here, LaFortune asserts that "spillover prejudice" related to the vast quantity of child pornography in his collection will unfairly prejudice his defenses to charges of posting and advertising child pornography online. All of LaFortune's crimes involve explicit images of sexual abuse of children. The online component of LaFortune's crimes is no less terrible than the collection component. LaFortune's attempt here to keep from the jury all evidence of his collection except for the six graphic images that he posted online is nothing more than a slightly veiled attempt to hide the ball from the jury. It is unlikely that a jury would believe a defense of accident, lack of knowledge, or lack of ability to use a computer when faced with an individual with such an extensive collection of child pornography, all of which he admits he gathered from online sources. But the fact that a jury would likely disbelieve such a defense does not mean that LaFortune's trial would not meet standards of fundamental fairness. This sort of spillover prejudice is insufficient to support a motion to sever. See Burgos, 254 F.3d at 14 (defendant's argument that if the jury were to believe that he was involved in one bank robbery, then it might also improperly be led to believe from that fact alone that he was involved in the other, was held to be "vaguely articulated prejudice" and, thus, insufficient to merit severance).

Finally, LaFortune makes a vague assertion in favor of severance that he cannot testify truthfully regarding Counts One and Four of the First Superseding indictment without such testimony "hastening a conviction" regarding receipt and possession of child pornography. At this point in the proceedings, LaFortune has utterly failed to make the requisite "convincing

showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." United States v. Jordan, 112 F.3d 14, 17 (1st Cir. 1997). Even if LaFortune were to provide specific information regarding his proposed testimony to the court in an upcoming hearing, it would be within the court's good discretion to "weigh the needs of judicial economy versus the defendant's freedom to choose whether to testify as to a particular charge." Id. (internal quotations omitted).

Even if such a specific proffer of testimony were eventually forthcoming from LaFortune, given the United States understanding of the evidence regarding Counts One and Four of the First Superseding Indictment, combined with the United States knowledge of the statements LaFortune made to the FBI regarding his online activities at the time of execution of the search warrant, the United States has grave doubts that LaFortune could credibly testify in a manner that would deflect guilt with respect to Counts One and Four any more easily than he could with respect to Counts Two and Three. Therefore, it is highly likely that judicial economy will outweigh LaFortune's interest in testifying.

In sum, LaFortune has offered inadequate grounds to justify severing the charged offenses and his motion must be denied.

Conclusion

Whereas the joinder of Counts One through Four is permissible under Rule 8(a), and whereas LaFortune has not demonstrated a strong showing of actual prejudice, the government respectfully requests that this Court deny LaFortune's Motion to Sever.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Dena T. Sacco
      DENA T. SACCO
      Assistant U.S. Attorney

      SARA L. GOTTOVI
      Trial Attorney

CERTIFICATE OF SERVICE

I, hereby, certify that a copy of the foregoing was served this day by hand upon counsel for the defendant, Syrie Fried, Esq. and Tim Watkins, Esq., by leaving said copy in the Federal Defender's Box located in the Clerk's Office of the John Joseph Moakley U.S. Courthouse.

      /s/ Dena T. Sacco
      DENA T. SACCO
      Assistant U.S. Attorney

Dated: April 18, 2005