UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 03-10366-PBS |
| ) | |
| GIRARD LAFORTUNE ) | |

DEFENDANT'S MOTION TO SUPPRESS FRUITS OF
ILLEGAL SEARCH AND SEIZURE AT 80 ALLEN RD., BILLERICA AND
MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant, Girard LaFortune, respectfully moves that this Court suppress from evidence at his trial (1) items observed or seized on October 29, 2003, including computer equipment and computer storage media, from 80 Allen Road, Billerica, as a result of a search warrant obtained by the Federal Bureau of Investigation (FBI), and (2) statements made by him contemporaneous with the search and his later arrest at 80 Allen Road.  As grounds for this motion, defendant states that the warrant was issued without the benefit of probable cause and reliance on the warrant was objectively unreasonable.  Thus, the evidence was obtained during the search was in violation of his rights under the Fourth Amendment to the Constitution and must be suppressed.  His statements were fruits of that search and thus must also be suppressed.

**RELEVANT FACTS**

The following facts are derived from an affidavit submitted on October 27, 2003 authored by FBI Special Agent Todd Richards.

The affidavit is attached as Exhibit A.

In May, 2003, Kari Morales Marsh, an FBI agent in Tuscon, Arizona was investigating violations of 18 U.S.C. § 2252 et. seq., the statutes criminalizing child pornography.  To do this, she would, in an undercover capacity, log into chat rooms and e-mail groups (sponsored by Yahoo!) that might have child pornography as their subject matter.  On May 21, 2003 she joined a Yahoo! group titled "baldy3," which featured e-mail posts containing images she considered to be child pornography.  She specifically identified three images that, according to a Yahoo date stamp, had been posted by "daveyjones20002000" on May 21, 2003.  The three images are described in ¶ 31 of the affidavit as (A) a prepubescent girl being penetrated by an adult male penis, (B) a prepubescent girl on a bed with her knees raised to her chest exposing her genitalia, and © a prepubescent girl on a bed with her legs spread to expose her genitalia.  Nowhere in the affidavit did Richards provide information that the subjects in the images were real children, rather than computer generated or otherwise altered.

As detailed in ¶¶ 33-34 of the affidavit, a trail of administrative subpoenas and Yahoo! search warrants connected "daveyjones20002000" to defendant's name and home address.  Armed with this information, agents in Boston learned that defendant was a registered sex offender and had been interviewed in

connection with a separate child pornography investigation one year before.

Agents applied for a search warrant to search defendant's home for evidence and instrumentalities of violations of 18 U.S.C. § 2252(a). Magistrate Judge Dein, in the course of reviewing the affidavit, personally reviewed the three referenced photographs. She made no finding that the images depicted were real children, as opposed to computer generated or otherwise altered images. She issued the search warrant on October 27, 2003.

Two days later, on October 29, 2003, agents executed the search warrant at 80 Allen Road. They seized a computer and computer storage media containing several thousand images. While various agents conducted the search of defendant's home, other agents interviewed defendant. As the material was discovered, defendant made a number of incriminating statements.

## ARGUMENT

THE SEARCH WARRANT FOR 80 ALLEN RD. WAS UNSUPPORTED BY PROBABLE CAUSE BECAUSE THE AFFIDAVIT FAILED TO PROVIDE EVIDENCE FROM WHICH THE MAGISTRATE COULD DETERMINE THAT THE IMAGES ATTRIBUTED TO DEFENDANT DEPICTED REAL CHILDREN; THE FRUITS OF THAT ILLEGAL SEARCH MUST THEREFORE BE SUPPRESSED.

A.   The Search Warrant Was Unsupported By Probable Cause

The application for the warrant, which authorized a search of "[t]he residence of Girard LaFortune" for evidence relating to items generally associated with child pornography, did not

demonstrate probable cause to believe that illegal images of pornography utilizing real children would be found at 80 Allen Road or that the defendant had committed a crime.

In Marcus v. Search Warrant, 367 U.S. 717 (1961), the Supreme Court considered the proper proceeding for the issuance of warrants for the seizure of allegedly obscene material. Because of the danger that constitutionally protected materials may be suppressed and because of the subtlety of the inquiry required to distinguish obscenity from protected matters, the Court ruled that "warrants issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of [the] materials considered . . . to be obscene" did not comply with the requirements of the First Amendment. Id. at 731-32; see also Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636 (1968)(per curium).

Here, the warrant application relied upon the agent's descriptions of the three pictures culled from the Yahoo! groups site to demonstrate lasciviousness and sexual activity. The magistrate made an independent assessment that the pictures reached that threshold. The affidavit failed however, to reveal any information whatsoever that the images contained depictions of real children and the magistrate made no independent finding that the images were more likely than not real children. This omission and lack of independent finding is fatal and the warrant

was therefor issued without probable cause that evidence of criminal activity, rather than images protected by the First Amendment, was likely to be found.  Marcus, supra.

In Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), the Supreme Court ruled that the sections of the Child Pornography Prevention Act ("CPPA") that prohibit computer-generated images that appear to be minors engaging in sexually explicit conduct are unconstitutionally broad.  The CPPA had expanded the prohibition on child pornography to include computer-generated images "that appear to be" minors engaging in sexually explicit conduct.  The Ninth Circuit had held the CPPA invalid and the Supreme Court affirmed as to two provisions of the CPPA, holding that the provisions were too broad because they unconstitutionally banned a substantial amount of protected speech.  The Court specifically rejected the government's argument that virtual child pornography must be banned to protect children, noting that the government "cannot ban speech fit for adults simply because it may fall into the hands of children." Id. at 252.  Similarly, the government's argument that virtual child pornography might whet pedophiles' appetites failed because the government "cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts." Id. At 253.  Finally, the Court rejected the government's argument that production of virtual or computer-generated child

pornography would make it difficult to prosecute those who producing images with actual children: the Court noted that such an argument "turns the First Amendment upside down" by allowing the government to ban protected speech as a means to ban unprotected speech. Id. at 255.

The First Circuit has interpreted Free Speech Coalition to require proof that an image depicts actual children in order to avoid running afoul of the First Amendment. United States v. Hilton, 386 F.3d 13, 18 (1st Cir. 2004). Absence of evidence to the contrary is not sufficient; rather, that the image is of children (and thus not constitutionally protected) is an element of the offense that the government must prove beyond a reasonable doubt. Id. This is specifically true of computer-generated or altered images because with sufficient technology an individual can create a constitutionally protected image that, for all intents and purposes, mimics actual images. Id. at 18-19.

Not surprisingly, given the constitutionally protected speech issues implicit in search warrants for alleged pornography, the First Circuit has previously ruled that Magistrate Judges have a substantial obligation to ensure that relied-upon images meet the test of criminally prohibited, rather than constitutionally-protected, of child sexual explicitness. In United States v. Brunette, 256 F.3d 14 (1st Cir. 2001), a law enforcement agent's averment in a search warrant affidavit that

the target possessed images that appeared to depict a "prepubescent boy lasciviously displaying his genitals" was not sufficient to establish probable cause to believe the materials were child pornography. Id. at 17. This was because the affidavit's language was nothing more than a bare assertion about the legal status of the images. Id. Although it affirmed on good-faith grounds, the court warned that an agent's failure to provide something more to the magistrate to show the criminal nature of the depictions would be viewed skeptically. Id. at 20.

Although the magistrate here reviewed the photographs to verify that they met the standard of lasciviousness, see Brunette, supra, defendant submits that the reasoning in Free Speech Coalition as elaborated in Hilton require that agents, when relying on photographs seeking a search warrant, produce evidence that from which the magistrate judge could conclude that the images more likely than not depicted real children, as opposed to computer generated or otherwise altered images. Only in this way can courts ensure compliance with the First Amendment. See Marcus, 367 U.S. at 731-32 (danger that constitutionally protected materials may be suppressed requires subtle and searching inquiry by magistrates to distinguish obscenity from protected matters in order to comply with First Amendment principles).

The affidavit's failure to disclose information from which the magistrate could conclude that the images depicted real children renders the search warrant facially invalid. The Court should suppress the fruits of the resulting search at defendant's residence at 80 Allen Road in Billerica.

B.  <u>The Good Faith Exception Does Not Apply</u>

The good faith exception applies if the search was conducted in objectively reasonable reliance on a defective warrant. It does not apply if "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization."  <u>United States</u> v. <u>Leon</u>, 468 U.S. 897, 922 n.23 (1984). The good faith of both the officers who execute the warrant and those who obtain it or provide information for it is at issue. Id. at 922-23 n.24. Accordingly, the case agent is not free to draft a warrant that fails to adhere to firmly established legal principles and then defend the search based on the good faith of the computer specialist who executed it.

This is particularly true where, as here, the agents involved were intimately familiar with the specialized world of child pornography investigations. <u>Free Speech Coalition</u>, a watershed case in which the Department of Justice was a party and which was closely watched and analyzed by the legal community as well the public at large, was decided over one year prior to the search in this matter. Consequently, this is a case where the

government faces a high burden to show good faith because of "the omission of a key ingredient, known to the law enforcement officers, leads to the subsequent invalidation of the warrant." United States v. Ricciardelli, 998 F.2d 8, 16-17 (1st Cir. 1993). The government cannot meet their burden here because, as in Ricciardelli, experienced agents presented an elaborate plan to search without apprising the magistrate of a significant fact: that they had no information concerning whether the images depicted real children.  See Id. at 17; see also Fuccillo, 808 F.2d 173, 178 (1st Cir. 1987)(warning that, in applying for a warrant, agents must "take every step that could reasonably be expected of them").  In these circumstances, the agents cannot invoke the good faith exception.  Ricciardelli, supra.

C.   Defendant's Statements Were the Fruits of the Illegal Search

Agents elected to execute the search warrant in the early morning hours of October 29, 2003.  Defendant, who works from 9:00 a.m. to 5 p.m. daily, was home at the time of the search. While various agents conducted the search of defendant's home, other agents interviewed defendant in the home.  Defendant was interrogated about his use of the internet, asked to point out where items could be found, and, as items were found, asked to explain their presence.  In these circumstances, the statements made were a direct result of the illegal search pursuant to the warrant and must therefore be suppressed.  Wong Sun v. United

States, 371 U.S. 471, 486 (1963).

## CONCLUSION

For the foregoing reasons, the defendant respectfully moves that this Court suppress from evidence at trial items illegally observed or seized on October 29, 2003 from 80 Allen Road, Billerica, as a result of the search warrant as well as statements made by him contemporaneous with the search and defendant's later arrest.

GIRARD LAFORTUNE,
By His Attorneys:


/s/ Timothy Watkins
Timothy Watkins
Syrie Davis-Fried
Federal Defender Office
408 Atlantic Ave., Third Floor
Boston, MA  02110
(617) 223-8061