UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | CRIMINAL NO. 03-10366-PBS |
| ) | |
| GIRARD LAFORTUNE ) | |

UNITED STATES'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS

The United States hereby opposes the Motion to Suppress filed by Defendant Girard LaFortune ("LaFortune") in the above-captioned matter. In his motion, LaFortune requests that the court suppress evidence obtained pursuant to a search warrant executed on October 29, 2003, on the ground that the warrant lacked probable cause and that law enforcement's reliance on the warrant was objectively unreasonable.

As will be discussed more fully below, the United States maintains that the warrant was sufficient on its face and demonstrated more than adequate probable cause. Defendant is seeking by his motion that this court apply a new, higher, legal standard for a finding of probable cause for search warrants relating to child pornography offenses. Even if this court were to apply such a heightened burden and on that basis found the warrant to be deficient, the Leon good faith exception applies here, so the evidence collected pursuant to the warrant should not be suppressed.

**RELEVANT FACTS**

LaFortune, a recidivist sex offender with prior convictions both in the Commonwealth of Massachusetts and in the District of Massachusetts, was charged by indictment with four crimes related to trafficking in and possession of child pornography on March 31, 2004.

Prior to his indictment, LaFortune had become the target of an undercover investigation originating at the Tuscon, Arizona Resident Agency of the FBI. In an undercover capacity FBI Special Agent Kari Morales Marsh was invited via email to join several Yahoo! Groups that provided access to internet space for individuals interested in trafficking in child pornography images, including a group called "Baldy3". Agent Marsh identified several individuals in these Yahoo! Groups who had transmitted child pornography. One such individual identified as having posted child pornography images in the "Baldy3" group used the Yahoo! user name of "davyjones20002000." Davyjones20002000 posted six images into a photo album named "holly n rim" in the "Baldy3" group. Davyjones20002000 also posted an e-mail message to the "Baldy3" group. The email message was entitled "as promised" and said, "added a few pics in folder . . Holly n rim, they my two favorites, will post more later, please post fills if u have." After trail of subpoenas ultimately identified the Yahoo! user davyjones20002000 to be LaFortune, Agent Marsh sent an investigative lead to the FBI Boston Field Office, which continued the investigation.

Special Agent Todd I. Richards of the Lowell Resident Agency investigated the case locally and prepared an affidavit in support of a search warrant application.[1] In the affidavit for the warrant, he recounted the investigative steps taken by SA Marsh in Arizona as well as steps he had taken locally. The affidavit specifically states that SA Marsh, in an undercover capacity, had been invited into several Yahoo! Groups which contained multiple photo albums of child pornography. (Aff. ¶¶ 24-29.) The term "child pornography" as used throughout the affidavit

---

[1] Because the affidavit was attached to the Defendant's Motion to Suppress as Exhibit A, we have not resubmitted it.

was a defined term meaning "a minor engaging in sexually explicit conduct" as defined in 18 U.S.C. § 2256. (Aff. ¶ 6.) Paragraphs 30-31 of the affidavit state that davyjones20002000, subsequently identified as LaFortune, posted a photo album that contained materials that met the statutory definition of child pornography. Paragraph 31 specifically describes three child pornography photos posted by LaFortune, which were reviewed by Magistrate Judge Dein before she issued the warrant on October 27, 2003.

The warrant was executed on October 29, 2003. During the execution of the warrant, a substantial amount of evidence was collected. LaFortune agreed to be interviewed by FBI agents present at the scene. During the interview, he told the agents that he used the name [davyjones20002000@yahoo.com](davyjones20002000@yahoo.com) to surf the internet. He was also shown several of the pictures from the "holly n rim" photo album from the Yahoo! Group. He admitted to downloading the pictures to his computer from somewhere on the internet and then subsequently uploading them to a different location on the internet. He could not remember the specifics of where he found the images or where he posted them, but he recalled first viewing the images approximately eight months prior to the search and posting them on the internet approximately five or six months prior to the search.

During the interview, LaFortune informed the agents of his prior conviction in Massachusetts for the sexual assault of his daughter. He also informed them of his arrest by postal inspectors and federal imprisonment, which he stated had occurred shortly after his release from state prison. In this context, he also told the Agents that he is sexually attracted to girls between the ages of 10 and 14, that he currently satisfies these urges by viewing sexually explicit photographs of young girls he obtains via the internet and that he will need lifetime therapy.

Agents seized one computer during the search. In addition they seized a large cache of computer media, including several different types of computer disks. A large number of disks, over 160, were found hidden in the drop ceiling of LaFortune's apartment. Included among these disks was one labeled "Rim Holly." The Rim Holly disk contained approximately 125 images of child pornography, including those images that were posted to the Yahoo! Group Baldy3 in the photo album called "holly n rim." The National Center for Missing and Exploited Children reviewed the contents of the Rim Holly disk and determined that many of the images were consistent with Holly Series and Rim G series of known child pornography images. This identification means that the children in the pictures are actual child victims previously identified by law enforcement. All totaled, there were over 10,000 images stored on computer media hidden in LaFortune's ceiling. The images featured children of all ages, from infants to teens, engaged in a variety of behavior, from extreme sado-masochistic sexual torture to fully clothed modeling.

Forensic analysis of LaFortune's computer hard drive revealed more images of child erotica and child pornography, and also revealed some of the means by which LaFortune obtained these images. The analysis shows that LaFortune was sophisticated enough to set up projects on a software program called Newsrover to automatically visit newsgroups dedicated to child pornography and download images to his computer. Analysis of the hard drive ties LaFortune to use of the moniker "Davyjones" and it also reveals that he was actively chatting online with others interested in child pornography and child sexual abuse.

Argument

LaFortune makes two arguments in support of his Motion to Suppress. First, he argues that the warrant was invalid because SA Richards' affidavit did not establish probable cause. See Defendant's Motion at 3-8. Second, he argues that, assuming the Court finds the affidavit insufficient, the Leon good faith exception should not apply. See id. at 8-9. Both of these arguments are without merit. Accordingly, this Court should deny Defendant's Motion in full.

A. The Issuing Judicial Officer Correctly Concluded That There was Probable Cause to Believe that Evidence of a Crime Would be Found at LaFortune's Residence

A warrant application must demonstrate "probable cause to believe that (1) a crime has been committed–-the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched–-the so-called 'nexus' element." United States v. Feliz, 183 F.3d 82, 86 (1st Cir. 1999). Under this standard, "the 'totality of the circumstances' disclosed in the supporting affidavits must demonstrate 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996)(quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)); see also United States v. Grant, 218 F.3d 72, 75 (1st Cir. 2000)(probable cause exists to search a home where the affidavit contains information showing a fair probability that evidence of the crime will be found there). As the First Circuit has stated, this is a less stringent standard than a "more likely than not" or preponderance standard. United States v. Melvin, 596 F.2d 492, 495 (1st Cir. 1979); see also Texas v. Brown, 460 U.S. 730, 742 (1983)(probable cause standard does not demand showing that the belief that evidence of a crime will be found be correct or more likely true than false). The threshold for probable cause is low. Suboh v. District Attorney's Office of the Suffolk

District, 298 F.2d 81, 96 (1st Cir. 2002).  Probable cause is a "commonsense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." United States v. Burhoe, — F.3d —, 2005 WL 1208133 (1st Cir. May 23, 2005) (internal quotations and alterations omitted).

A reviewing court must read the affidavit "in a practical commonsense fashion." Feliz, 183 F.3d at 86.  Moreover, "considerable" deference must be accorded the probable case determination, and in a "doubtful or marginal case" the reviewing court normally will defer to that determination.  Zayas-Diaz, 95 F.3d at 111; see also United States v. Jewell, 60 F.3d 20, 22 (1st Cir. 1995)(courts grant "great deference" to magistrate's evaluation of supporting affidavit); United States v. Spinosa, 982 F.2d 620, 626 (1st Cir. 1992)(same).

LaFortune argues in his Motion to Suppress that the affidavit supporting the search warrant was deficient because the warrant did not contain specific affirmative factual recitation that the children depicted in the images were "real."  Not only is this argument based upon an entirely false underlying factual premise that "fake" child pornography is readily available, but it also significantly heightens the evidentiary burden for probable cause.

Here, the totality of the facts and circumstances discussed in the warrant make a strong showing of probable cause.  Agent Richards' affidavit is based upon violations of 18 U.S.C. §§ 2252(a)(1), (a)(2) and (a)(4) – sections of the code that have always required the government to prove beyond a reasonable doubt at trial that the children depicted in child pornography images are "real."[2]  In the affidavit, Agent Richards carefully recounted the facts of Agent Marsh's

---

[2]It is also important to note that LaFortune's motion spends a significant amount of time discussing Free Speech Coalition v. Ashcroft, 535 U.S. 234 (2002), a case that did not directly address 18 U.S.C. § 2252, the statute under which LaFortune is charged, but rather directly

investigation and described the images posted in the "holly n rim" photo album.  (Aff. ¶¶ 24-34.) The affidavit states that Agent Marsh concluded that the images posted in the photo album were child pornography, meaning pictures of minors under the age of 18 engaging in sexually explicit conduct.  (Aff. ¶¶ 6, 29 - 31.)  Agent Richards also viewed the images and described three of them in the affidavit in detail, not in a conclusory fashion.  (Aff. ¶¶ 31A-C.)  The description of the file named "RIMG0060" says that it "depicts a prepubescent girl being penetrated by an adult male penis."  (Aff. ¶ 31A.)  The description of the file named "HLY 14" states that the file "depicts a prepubsecent girl on a bed with her knees raised to her chest exposing her genitalia." (Aff. ¶ 31B.)   Finally, the description of the file "R401" states that the file "depicts a prepubescent girl on a bed with her legs spread to expose her genitalia."  (Aff. ¶ 31C.)

In addition to the description of the pictures, several other elements of the warrant add to the totality of the facts and circumstances that provide more than an adequate basis for probable cause.  LaFortune was a member of the Baldy3 Yahoo! Group, which was a group that contained multiple photo albums of child pornography. (Aff. ¶ 29.)  He had posted an email in the group directing others to look at his photo album and characterizing the Holly series and Rim series as his "two favorites."  (Aff. ¶ 32.)  This shows a detailed knowledge of the world of child pornography.  The affidavit also states that LaFortune was listed on the sex offender registry for

---

applied to its sister statute, 18 U.S.C. § 2252A.  Section 2252 was not enacted as part of the Child Pornography Prevention Act of 1996 and has not in any part been held to be constitutionally defective.  Indeed, it has always required the government to prove that the victim in a visual depiction is a minor (meaning a person under the age of 18) engaged in sexually explicit conduct.  18 U.S.C. §§ 2252, 2256.  Section 2252 dates back to the Protection of Children Against Sexual Exploitation Act of 1977. The dual existence of sections 2252 and 2252A side by side in the criminal code was presumably a strategic move by Congress to ensure that child pornography prosecutions would continue even if the 1996 enactment faced a pre-enforcement challenge.

the Commonwealth of Massachusetts. (Aff. ¶ 35B.) Finally, Magistrate Judge Dein noted that "I personally reviewed the referenced photographs." (Aff. p. 17.)

LaFortune finds fault with the affidavit because it "failed . . . to reveal any information whatsoever that the images contained depictions of real children.[3]" The first response to this argument is that as a matter of language an emphasis on the "reality" of a "girl" or a "minor" is unnatural and unnecessary. When, as here, the affidavit does not qualify the descriptions with language such as "appears to be" or give any indication that the images are other than real, the words should be given their plain meaning. When the affiant said "girl" in the affidavit he meant a female human child. (Aff. ¶¶ 31A-C.) Second, the magistrate judge should be able to rely upon a review of the pictures themselves to reach the conclusion that that there is probable cause to believe that they are real children. See United States v. Nolan, 818 F.2d 1015 (1st Cir. 1987) (stating that fact finder's review of pictures themselves adequate for finding of guilt beyond a reasonable doubt and that the government is not required to provide expert evidence to disprove mere hypothetical possibility). Third, given the full context of this investigation, in which the target was a member of a Yahoo! Group dedicated to trading child pornography, in which he had indicated his knowledge of this illegal subject matter by posting an email to the group, and in which he was a registered sex offender, the magistrate judge was entitled to conclude based on all of the surrounding facts and circumstances that it was likely that the subject would possess child pornography images that met the statutory definition without having to reach a specific

---

[3] LaFortune has not made clear in his motion what form the additional information regarding the children in the pictures should take. Presumably he would like to see a reference to an expert's analysis.

conclusion that the images shown to her were themselves pictures of real children.[4]

One Memorandum Opinion from the Northern District of Illinois previously has addressed this precise question. In United States v. Watzman, 2004 WL 2260622 (N.D. Ill. Oct. 1, 2004), the defendant filed a motion to suppress stating that the search warrant affidavit failed to establish probable cause to believe that a crime had been committed because statements in the affidavit referred to pictures that "appeared to be" real children. Watzman, 2004 WL 2260622 at *1. The defendant suggested that further technological analysis of the images, which would show that they matched images of known victims of child sexual abuse, should be required for a finding of probable cause. Id. By applying an analogy to drug search warrants, the court determined that no such additional proof that the images depicted real children should be required. The court said:

> [An affiant in a drug warrant] will say that he purchased white powder from the defendant on several occasions, paying the usual price for cocaine, and that when he recently left the defendant's premises, there were similar bags of white powder on the kitchen table. Such an affidavit would usually justify the issuance of a warrant even though it does not describe a chemical analysis which proved the white powder to be cocaine. The government would have to prove at trial, of course, that the substance was cocaine, just as the government in the instant case will have to prove that the images found at defendant's premises were of actual children. But like the drug case, we think the circumstances set fourth in the affidavit here were sufficient to justify the inference that the defendant was accessing images of real children. The possibility that they were virtual images could be greater than the possibility that the white powder was flour or milk sugar, but not enough to preclude probable cause.

Id.

In other words, things are often presumed to be as they appear for probable cause

---

[4]This is especially true at the present time when experts in the field will state with certainty that nearly all, if not all, child pornographic images in circulation on the internet are produced as the byproduct of the sexual abuse of actual child victims.

purposes. Probable cause often rests on: "reliable informants," who are far from infallible; eyewitness identifications, which can be incorrect; and on license plate numbers, when VIN numbers would be more precise. A requirement of iron clad proof that the government will be able to convict the target of a crime at the search warrant stage of criminal proceedings is a large step up in the evidentiary burden that would significantly impede law enforcement efforts, and is not one that should be taken here.

B.   Even if this Court Finds a Lack of Probable Cause, it Should Deny LaFortune's Motion to Suppress Pursuant to the Good Faith Exception to the Exclusionary Rule

If this Court were to determine that SA Richards affidavit failed to establish probable cause for the search, it nevertheless should uphold the search pursuant to the "good faith" exception to the exclusionary rule articulated by the Supreme Court in Leon, 468 U.S. at 897. Because no deterrent purpose is served by sanctioning "objectively reasonable" law enforcement conduct, the "extreme sanction" of exclusion is inapplicable where the search warrant was obtained in an "objectively reasonable" manner from a neutral magistrate, even assuming the warrant or supporting affidavits were defective. Leon, 468 U.S. at 926; see also Zayas-Diaz, 95 F.3d at 113. The Court held that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Leon, 468 U.S. at 918.

There are four circumstances in which the good faith exception does not apply, none of which are applicable here: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) where the issuing magistrate wholly abandoned his

10

judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979) (holding that magistrate lacked detached neutrality because after signing warrant for search of bookstore for obscene materials, town justice conducted himself as "adjunct law enforcement officer" by participating in search and judging what was obscene); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid. Leon, 468 U.S. at 963.

     In this case, the agents who obtained and executed the warrant were reasonably relying on their understanding of the legal requirements at the time of the search. At the time the warrant was executed, the weight of legal authority indicated that no independent evidence regarding the "realness" of the children was necessary to obtain a lawful search warrant. Indeed, several courts, including the First Circuit, have held both before and after the warrant in this case was issued that a trial jury could find guilt beyond a reasonable doubt, including the element that the children depicted in the images were real, based upon a review of the images themselves without any additional expert testimony. United States v. Nolan, 818 F.2d 1015 (1st Cir. 1987); United States v. Deaton, 328 F.3d 454 (8th Cir. 2003) (holding that in prosecution under 18 U.S.C. § 2252, government is not required to put forth affirmative evidence that children were not computer generated); United States v. Slanina, 359 F.3d 356 (5th Cir. 2004) (holding that expert testimony is not required to prove that cp images depict a real minor); United States v. Farrelly, 389 F.3d 649 (6th Cir. 2004) (holding that the government is not required to produce expert

testimony in child pornography prosecution to establish that images are of real children).

Given the state of the law at the time the search warrant was executed, even if this court now were to determine that the affiant should have included additional evidence in his affidavit to support the conclusion that the images were of real children, the uncertain state of the law made reliance on the warrant objectively reasonable. United States v. Brunette, 256 F.3d 14, 19 (1st Cir. 2001).

## Conclusion

Based on the foregoing, the United States respectfully requests that the Court deny LaFortune's Motion to Suppress in its entirety.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Dena T. Sacco
DENA T. SACCO
Assistant U.S. Attorney

SARA L. GOTTOVI
Dated: June 8, 2005                                  Trial Attorney

## CERTIFICATE OF SERVICE

I, hereby, certify that a copy of the foregoing was served this day by hand upon counsel for the defendant, Syrie Fried, Esq. and Tim Watkins, Esq., by leaving said copy in the Federal Defender's Box located in the Clerk's Office of the John Joseph Moakley U.S. Courthouse.

/s/ Dena T. Sacco
DENA T. SACCO
Assistant U.S. Attorney