UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 03-10366-PBS |
| | ) | |
| v. | ) | |
| | ) | GOVERNMENT'S TRIAL BRIEF |
| GIRARD LAFORTUNE | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys Michael J. Sullivan, United States Attorney for the District of Massachusetts, George Vien, Assistant United States Attorney, and Sara Gottovi, Trial Attorney, Department of Justice Child Exploitation and Obscenity Section, respectfully submits its Trial Brief.

This Brief will discuss the contents of the First Superceding Indictment, the elements of the charged offenses, the Government's anticipated proof on the elements of the offenses and certain legal issues that may arise.

## I.  Factual Background

Prior to his arrest in October of 2003 in this case, Girard LaFortune was leading a double life – a life completely foreign to the average citizen.  In one aspect of his life, he seemed average and responsible; he held down a job working at a supermarket deli.  He attended once-weekly group therapy for sex offenders.  In the other aspect of his life, however, he had a

1

terrible secret.  He spent time using the name davyjones20002000
in a world where horrific images of child sexual abuse are traded
like baseball cards.  He was driven by his intense sexual
interest in children to collect child pornography.  As he told
the FBI, he had no friends; he would come home from work at night
and log on to his broad band cable modem connection and download
child pornography for hours.  Then he would satisfy his sexual
needs by masturbating to it.

Through his connection to the internet, he amassed a huge
collection of child pornography featuring victims of both genders
and with age ranges from infant to adolescent.  But to feed his
sexual desires, he needed a constant supply of new and better
images.  In order to get the newest material representing the
freshest child sexual abuse, it wasn't enough to simply subscribe
to a web site and pay for child pornography (which he did) or to
set his Newsrover program to visit underground child pornography
newsgroups (which he did) – he had to be in touch with others
around the country and the globe through the internet who shared
his interest.

To be accepted by a group of individuals cognizant that they
are breaking the law, such as a group trading child pornography,
it is not enough to say "please."  You have to prove yourself –
you have to show you really do share the same interests by
posting child pornography.  So that is exactly what LaFortune

did.  He posted child pornography on the internet.  He asked others on the site to look at his child pornography and he asked them to post their "fills," other images in the child pornography series.

The secret half of LaFortune's life was revealed when undercover FBI Special Agent Kari Morales Marsh in Tucson, Arizona went online in Yahoo!.  She posted a profile that indicated an interest in images of child sexual abuse and she waited in a chat room.  She was approached by someone who sent her child pornography over instant messaging and invited her into his Yahoo! Groups.  One of those groups was Baldy3.  Inside Baldy3, Agent Marsh found a community dedicated to trading child pornography and she identified several targets who had posted child pornography images in photo albums and posted messages in the group drawing attention to their child pornography photo albums.  One of those targets was davyjones20002000.  Subpoenas led to the conclusion that davyjones20002000 was Girard LaFortune, a registered sex offender in the Commonwealth of Massachusetts.

Agent Marsh's undercover work formed the basis for a search warrant issued in the District of Massachusetts.  During the search, LaFortune first admitted only to possessing "modeling" pictures of young girls.  As the searching agents located a huge cache of computer media hidden in the drop ceiling of his studio

apartment, he admitted more.  He told the agents that he had posted photos in Yahoo! groups.  He did not remember the name Baldy3, but he recognized the pictures and told the agents that he had first downloaded those pictures from somewhere on the internet before he had uploaded them to the group.

II.   <u>The Superceding Indictment</u>

On March 31, 2004, a Grand Jury in Boston returned the four-count First Superseding Indictment against Girard LaFortune. LaFortune has indicated an intent to plead guilty to Counts 2 and 3 of the Indictment on October 27, 2005, therefore only Counts 1 and 4 will be discussed in this Trial Brief.

A.  Count One

Count One of the First Superseding Indictment charges LaFortune with transporting child pornography in interstate commerce and with the lesser included offense of attempting to transport child pornography in interstate commerce. Specifically, it charges:

> On or about May 21, 2003, at Billerica in the District of Massachusetts, and elsewhere, GIRARD LAFORTUNE, defendant herein, knowingly transported and attempted to transport a visual depiction in interstate commerce by any means, including by computer, the production of such visual depiction having involved the use of a minor engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A), and such depiction being of such conduct, to wit: computer image files contained in the photo album "holly n rim" on the Yahoo! Group Baldy3.
> All in violation of Title 18, United States Code, Section 2252(a)(1) and (b)(1).

4

The elements of the offense charged in Count One of the First Superseding Indictment are:

**FIRST**, that the defendant knowingly transported a visual depiction in interstate commerce by any means, including by computer;

**SECOND**, that the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;

**THIRD**, that such visual depiction was of a minor engaged in sexually explicit conduct;

**FOURTH**, that the defendant knew that such visual depiction was of a minor engaged in sexually explicit conduct.

In order to carry its burden of proof for the crime of attempt to transport child pornography in interstate commerce as charged in Count One of the indictment, the government must prove the following two things beyond a reasonable doubt:

**FIRST**, that defendant intended to commit the crime of transportation of child pornography in interstate commerce; and

**SECOND**, that defendant engaged in a purposeful act that, under the circumstances as he believed them to be, amounted to a substantial step toward the commission of that crime and strongly corroborated his criminal intent.

B.  Count Four

In Count Four of the First Superseding Indictment, LaFortune

is charged with a violation of Title 18, United States Code,

Section 2251(d), which, in sum, prohibits making, printing, or

publishing or causing to be made, printed or published, any

notice or advertisement seeking or offering child pornography.

Specifically, Count Four charges:

> On or about May 21, 2003, at Billerica in the
> District of Massachusetts, and elsewhere, GIRARD
> LAFORTUNE, defendant herein, did knowingly make, print
> and publish, and caused to be made, printed and
> published, seeking and offering to receive, exchange,
> buy, produce, display, distribute, and reproduce visual
> depictions, the production of which visual depictions
> involved the use of a minor engaging in sexually
> explicit conduct and which visual depictions were of
> such conduct, and which such notice and advertisement
> was transported in interstate commerce, to wit: an
> email entitled "as promised."
> All in violation of Title 18, United States Code,
> Section 2251(d).

The elements of the offense charged in Count Four of the

First Superseding Indictment are:

**FIRST**, defendant knowingly made or published, or caused to

be made or published a notice or advertisement;

**SECOND**, the notice or advertisement sought or offered to

receive, exchange, display or distribute any visual depiction, if

the production of the visual depiction utilized a minor engaging

in sexually explicit conduct and such visual depiction is of such

conduct; and

**THIRD**, such notice or advertisement was transported in

interstate or foreign commerce by any means, including by

computer.

6

C.  Generally Applicable Definitions

Title 18, United States Code, Section 2256 contains definitions that are generally applicable to both Sections 2251 and 2252.  For purposes of this Indictment, "visual depiction," "minor" and "sexually explicit conduct" are statutorily defined terms.  "Minor" means any person under the age of eighteen.  18 U.S.C. § 2256(1).  The term "visual depiction" includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.  18 U.S.C. § 2256(5).

The term "sexually explicit conduct," is defined in Title 18, United States Code, Section 2256(2) as follows:

actual or simulated--

> (A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
>
> (B) bestiality;
>
> (C) masturbation;
>
> (D) sadistic or masochistic abuse; or
>
> (E) lascivious exhibition of the genitals or pubic area of any person.

Lacivious exhibition of the genitals or pubic area of any person will be at issue in this case.  In order to determine whether a visual depiction is a lascivious exhibition of the genitals or pubic area, the jury is required to consider the overall content of the visual depiction, while taking into

account the age of the child depicted.  The standard for "lacivious exhibition of the genitals or pubic area" was discussed at length in United States v. Amirault, 173 F.3d 28 (1st Cir. 1999), albeit in a sentencing context.  In Amirault the First Circuit approved application of the Dost factors, to assist a jury in determining whether an image qualified as a lacivious exhibition of the genitals or pubic area.

According to Amirault/Dost The following list of factors, while not exhaustive, are among the things the jury should consider:

1) whether the focal point of the visual depiction is on the child's genitals or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or

designed to elicit a sexual response in the viewer.

It is not necessary that the images be intended or designed to elicit a sexual response in the average viewer, and the jury may consider whether the visual depictions would appeal to persons who are sexually attracted to children (i.e., "pedophiles").  Of course, a visual depiction need not involve all of these factors to be a lascivious exhibition, and their may be additional factors that weigh in the jury's decision, which are not listed here.  It is for the jury to decide the weight or lack of weight to be given to any of these factors.

III.  <u>The Government's Proof</u>

Presented in summary form, the Government intends to present the following evidence during its case in chief with respect to Counts One and Four of the First Superseding Indictment.  This summary represents the best of the United States' knowledge and belief of its case and chief at the present time, but is subject to change.

A.  Testimony of FBI Special Agent Kari Morales Marsh

It is anticipated that Special Agent Marsh's testimony will explain that she was engaged in undercover operations in Yahoo! Groups in the Spring of 2003 from her office in Tucson, Arizona and captured the illegal activity of davyjones20002000. She will testify regarding the content of the photo album "Holly n' Rim" from the Baldy3 Group, posted by

davyjones20002000.  She further will testify that she received an email and saw a message posted in the Baldy3 Group from davyjones20002000 called "as promised" and will read its contents,  "added a few pics in folder . . holly n rim, they my two favorites, will post more later, please post fills if u have."  She will also testify as to her activities in tracing the identity of davyjones20002000 back to Girard LaFortune via subpoenas issued to Yahoo! and Comcast and regarding documents she received in response to a search warrant issued to Yahoo! for the Baldy3 Group.

Expected exhibits in relation to Special Agent Marsh's testimony include screen shots capturing her undercover activity, including her captures of the child pornography images and the email entitled "as promised."  She will identify subpoena responses received from Comcast and Yahoo! and the search warrant return received from Yahoo!

B.  Testimony of Comcast Document Custodian

It is expected that the Comcast document custodian will testify regarding their subpoena return to Special Agent Marsh, which identified Girard LaFortune as the user of an IP address.

The Government expects to admit the subpoena return pursuant to either FRE 803(6) or 807.

C.  Testimony of Yahoo! Document Custodian

It is expected that the Yahoo! Document custodian will

10

testify regarding general Yahoo! practices and the subpoena
return providing log-in IP addresses of davyjones20002000,
which it provided to Special Agent Marsh. The custodian will
also testify regarding log records for the Yahoo! Group Baldy3
which were provided in response to a search warrant prepared by
Special Agent Marsh.  The Yahoo! document custodian will
explain the nature of the log entries with respect to
davyjones20002000.

The Government expects to admit the subpoena and search
warrant returns pursuant to either FRE 803(6) or 807.

D.   Testimony of Special Agent Larry Traviglia

It is anticipated that Special Agent Traviglia will
testify that he participated in the search of LaFortune's home
on October 29, 2003.  He will describe evidence that he found
and seized during the search, including the laptop computer,
and the large cache of computer media found hidden in the drop
ceiling.  He will describe certain of these materials from the
ceiling in detail, including a particular case which was
ultimately found by another agent to contain a CD labeled "Rim
Holly."

The United States expects to admit as an exhibit the case
containing the CD labeled "Rim Holly" found in the drop
ceiling.

E.   Testimony of FBI Special Agent Kevin Swindon

11

It is anticipated that Special Agent Swindon will testify regarding the making of a forensic copy of LaFortune's hard drive and how that was done.  He will explain different areas of the computer that are likely to contain evidence and how a special computer forensic program he runs reveals evidence on the computer at the time of the seizure, even if it has been deleted.  He will also testify regarding derivative evidence from the hard drive of the computer, which he prepared for examination by the Case Agent, David George.

F.    Testimony of FBI Special Agent David George

Special Agent George is the case agent for this matter. He is likely to testify regarding his participation in the search of LaFortune's home on October 29, 2003 and also on his participation in the interview of LaFortune, which took place at LaFortune's home on that date.  He will describe the defendant's prior convictions.  He will also testify that "a large quantity of child pornography" was found during the search of LaFortune's home on October 29, 2003.  In addition, he will testify regarding examining the collection of child pornography and finding, in the case previously described by Special Agent Larry Traviglia, a CD entitled "Rim Holly."  He will show images from this disk to the jury, discuss the number of images on the disk and explain that he found among them an identical match to the images posted in LaFortune's photo album

in Yahoo! Group Baldy3.  Special Agent George will also testify
regarding evidence found on the hard drive of the computer
seized from LaFortune's residence, which links LaFortune to
child pornography, Yahoo! Groups, and to the name
davyjones20002000.  He will also testify as to chats recorded
on the computer that show LaFortune discussing trading child
pornography, Yahoo! Groups and sexual access to children.

The United States plans to admit exhibits demonstrating
LaFortune's use of Yahoo! Groups and his use of the name
davyjones20002000 both recovered from the search of his
residence and recovered from the hard drive of the computer
seized during the search of his residence as well as images of
child pornography on the CD labeled "rim holly" found in the
ceiling of the residence.  The United States will also admit
copies of Yahoo! screen print-outs signed by LaFortune.  Please
see the United States' Motion pursuant to 404B for more
information regarding the United States' plan to admit the
entire contents of the "rim holly" disk, information regarding
the "large quantity of child pornography" that was found during
the search and on the computer, chat transcripts, and
information regarding LaFortune's prior convictions.

G.  Testimony of Expert Witness Dr. Celeste Wilson

Doctor Wilson is an expert pediatric witness.  She will
testify as to the age of the victims depicted in images posted

13

in LaFortune's "Holly n' Rim" photo album.  She will use the
previously admitted images as an aid to her testimony.  We
expect that she will conclude that many of the images represent
minors under the age of 18.

H.  Testimony of Expert Witness Ken Lanning

Ken Lanning will provide expert educational testimony
regarding the modus operandi of individuals who engage in
trading child pornography online.  He will also testify as to
his opinion that the content of the email "as promised" is
consistent with the behavior of those engaged in trading child
pornography online.

Please see the United States' separate motion on the
admissibility of Ken Lanning's testimony.

I.  Testimony of Expert Witness Lam Nguyen

Lam Nguyen is an expert computer forensic witness.  He
will testify regarding the software found on LaFortune's
computer.  He will discuss the functions and evidence
elimination capabilities of Windows Washer Pro, which was found
installed on LaFortune's computer.  Mr. Nguyen may also testify
to LaFortune's set-up and use of some more sophisticated tools
for the collection of child pornography installed on his
computer, particularly the NewsRover program.

J. Testimony of ICE Special Agent Melissa MacDonald

Special agent MacDonald is expected to testify that she

met "Holly" during her involvement in the investigation of
"Operation Hamlet," a case that originated in Denmark and
involved an international ring of parents who sexually abused
their children and put the images of abuse on the internet.
Special Agent MacDonald will testify that her investigation and
the abuse of "Holly" took place outside Massachusetts.  She
will also testify that "Holly" is a minor.

    K.  Other Law Enforcement Officers

    Other law enforcement officers will be called as
necessary.

IV. <u>Trial Issues</u>

    A. Essential Elements

    With respect to Count One of the First Superseding
indictment, the United States does not anticipate meritorious
legal or factual challenges to its proof of the essential
elements of the crime.

    On the first element of the crime, that the defendant
knowingly transported a visual depiction in interstate commerce
by any means, including by computer, the evidence in the case
will be that electronic pictures posted by Girard LaFortune
were viewed by Special Agent Marsh in Tucson, Arizona while she
was in a Yahoo! Group.  LaFortune admitted to the FBI during
the search of his home that he posted these images.  Under
First Circuit law, there is no requirement that the defendant

evince any actual knowledge of the interstate nature of the internet.  United States v. Robinson, 137 F.3d 652, 655 (1st Cir. 1998).

Regarding the second element of the offense, that the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, and the third element, that such visual depiction was of a minor engaged in sexually explicit conduct, the government will present at least one image that clearly meets the definition of lascivious exhibition of the genitals or pubic area.  A pediatrician will testify that the victim in the image is a minor, and a law enforcement officer who met the victim will testify that she is a real person.

On the fourth element, that the defendant knew that such visual depiction was of a minor engaged in sexually explicit conduct, the government may prove knowledge through direct or circumstantial evidence and through the defendant's "reckless disregard of the obvious."  United States v. Gifford, 17 F.3d 462 (1st Cir. 1994); United States v. Burian, 19 F.3d 188, 191 (5th Cir. 1994) (adopting reckless disregard standard); United States v. Kimbrough, 69 F.3d 723, 733 (5th Cir. 1995) (reaffirming reckless disregard standard).  The government need not prove that the defendant had knowledge as to the specific age of the child depicted.  United States v. Fabiano, 169 F.3d

1299, 1303 (10th Cir. 1999) (approving language in jury
instruction).

In this case, the images themselves plainly inform the
viewer that the children depicted in them are under the age of
18. In addition, many additional facets of the anticipated
evidence during the Government's case in chief provide direct
and circumstantial evidence the defendant knew the content of
the images: (1) LaFotune identified all six photographs posted
by davyjones20002000 in the Baldy3 group, admitted downloading
them from one place on the internet and then posting them in a
Yahoo! Group; (2) having been through the federal system on
child pornography charges before, he explained to FBI agents
that he had in his possession some pictures that would meet the
definition of child pornography and others that would not; (3)
LaFortune also told the FBI that he is sexually attracted to
girls between the ages of about 10 to 14 and that he
masturbates to child pornography to satisfy his sexual
urges;(4) chat conversations saved on his laptop computer
demonstrate that LaFortune was extremely well versed in details
of the images he was trading and currently interested in
sexually abusing children under the age of 18; and (5)
testimony reflecting that LaFortune was an avid and
knowledgeable collector of child pornography.

Proof on Count Four of the First Superseding Indictment is

17

similarly straightforward, however, because of the high
sentence associated with this count, the Government is
anticipating challenges to arise on every element of the
offense.  None of these challenges will have merit.

The first element of the offense, that defendant knowingly
made or published, or caused to be made or published, a notice
or advertisement has two parts.  The first relates to "made or
published" and the second relates to "a notice or
advertisement."  It is clear that a posting on the internet
can meet both of these requirements.  There are very few
reported cases addressing aspects of 18 U.S.C. § 2251(d) or its
predecessor 18 U.S.C. § 2251(c).  Available case law, however,
is unanimous in finding that an internet community may be a
place for "making or publishing," and that even a cryptic
announcement on the internet is a sufficient "notice or
advertisement."  See United States v. Rowe, 414 F.3d 271, 280
(2d Cir. 2005) (posting in internet chat room "preteen00");
United States v. Pabon-Cruz, 391 F.3d 86 (2d Cir. 2004)
(posting in "preteenrapesex" chat room); United States v.
Gonzales, 53 Fed.Appx. 464 (9th Cir. 2002) (unpublished)(posting
on IRC file-server).

These courts' understanding of this statute comports both
with its plain language and with the legislative history
underlying its enactment.  The prohibition on notices or

18

advertisements regarding child pornography came into the criminal code as part of the Child Sexual Abuse and Pornography Act of 1986[1], P.L. 99-628.  Findings of the house judiciary committee in House Judiciary Committee Report  H.R. Rep. 99-910 specifically clarify the non-commercial nature of the prohibition on advertising, noting "experience revealed that much if not most child pornography material is distributed through an underground network of pedophiles who exchange the material on a non-commercial basis, and thus no sale is involved."  H.R. Rep. 99-910 at 4.  Even back in 1986, Congress weighed in on the prospect of computer-based notices, stating: "A recent technological phenomenon, computer 'bulletin boards,' have been discovered to be used to offer pornography for sale or exchange or to advertise the availability of children for sexual exploitation.  Use of a computer bulletin boards for such notices, since they are a means of interstate commerce, would also be prohibited by this section."    Id. at 6.

Moving on to the second required element of the offense, the notice or advertisement sought or offered to receive, exchange, display or distribute any visual depiction, if the production of the visual depiction utilized a minor engaging in sexually explicit conduct and such visual depiction is of such

_____

[1]"An Act to amend title 18 of the United States Code to ban the production and use of advertisements for child pornography or solicitations for child pornography, and for other purposes."

conduct, likewise has two parts.  We will not discuss the
second part, that the visual depiction utilized a minor, etc.,
as those issues previously were addressed in depth above in the
discussion of Count One of the Indictment and do not differ
here.

The first part of this element requires that the notice
sought or offered to receive, exchange, display or distribute
any visual depiction.  In this case, the notice in question was
posted in the messages section of an online group dedicated to
trading child pornography and was also distributed directly by
email to any member of the group who elected to receive such
emails.  The notice said "added a few pics in folder . . holly
n rim, they my two favorites, will post more later, please post
fills if u have."  This message clearly invites any reader, who
would necessarily be another person interested in child
pornography in the context of this group, to come and look at
his "pics" or pictures.  It also flags for the knowledgeable
reader that these are "holly" and "rim," specific child
pornography series.  In addition, it requests that the reader
"post fills," which, to those in the know, is a request for
additional child pornography images from these series.  At a
minimum, this posting clearly is an invitation for other child
pornography collectors to go to his photo album and view his
display of child pornography images or receive his child

20

pornography images.  When understood in its full context, this notice in the Baldy3 group is a full-fledged request for an exchange, informing the reader that LaFortune had pictures to offer and wanted more pictures for himself.

Finally, the third element of this charge, that such notice or advertisement was transported in interstate or foreign commerce by any means, including by computer, is easily met.  As discussed above, the content of this message was obtained by an undercover agent in Tuscon, Arizona.

B.   Evidentiary Issues

Aside from the more complex issues of FRE 404(b) evidence, and the testimony of Ken Lanning raised in separate motions, the United States does not foresee complications arising in the admission of its evidence.

One issue that the Court should address, as a practical rather than a legal matter, is the handling of exhibits containing child pornography.  While it is standard practice for most exhibits to be displayed on the screen for public view, the Court may prefer that exhibits of child pornography images not be displayed, but rather published to the jury without use of the public screens.  In addition, while it is the standard practice to leave exhibits out in the courtroom overnight, and during afternoon hearings, it would not be appropriate to follow this practice with respect to child

pornography images, which are contraband.  The United States
requests permission to secure exhibits containing such images
overnight between court sessions.

RESPECTFULLY SUBMITTED,

MICHAEL J. SULLIVAN
United States Attorney


/s/ George W. Vien
George W. Vien
Assistant United States Attorney
Sara Gottovi
Trial Attorney