```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
         v.                     )  Cr. No.: 03-10366-PBS
                                )
GIRARD LAFORTUNE                )
```

GOVERNMENT'S PROFFER AND MOTION
TO ALLOW TESTIMONY OF KENNETH LANNING

At the Status Conference on October 12, 2005 the Court directed the government to submit a proffer of the expected testimony of Kenneth Lanning and the cases in which Mr. Lanning was allowed to testify. The government now makes that proffer and moves that Mr. Lanning be allowed to testify in this case concerning 1) the modus operandi of people who trade and collect child pornography, and 2) the meaning of the words that the defendant posted in the Internet chat room at issue in this case. As more fully explained below, several federal courts have accepted testimony from Mr. Lanning for exactly these purposes.

In the present case, Mr. Lanning should be allowed to testify because his testimony would help the jury understand the very strange world of child pornography in which collecting pictures and gaining validation and approval from other like-minded collectors is a far more common motivation than financial gain. In addition he should be allowed to testify concerning the particular jargon the defendant used to offer and solicit child pornography in this case. Much like drug traffickers, people

1

involved in the collection and trade of child pornography use jargon unfamiliar to the average juror.  It is entirely appropriate to allow expert testimony that assists the jury in understanding the meaning of this jargon.

### Relevant Factual Background

This case resulted from the work of an undercover FBI agent who "met" the defendant in an Internet chat room.  The defendant sent an email to the group titled "as promised" with the comment: "added a few pics in folder..holly r. rim, they my two favorites, will post more later, please post fills if u have."  In the photo section of the group the defendant posted a folder containing six pornographic photographs of prepubescent girls.

The FBI then executed a federal search warrant at the defendants home and seized a large amount child pornography off the hard drive of his computer and hidden in the suspended ceiling.  Among the images seized were the same pictures that the defendant posted in the photo section of the chat room.

### The Qualifications And Testimony Of Kenneth Lanning

The government intends to call Kenneth Lanning as a witness at trial.  Put simply, Mr. Lanning is the most knowledgeable person in America concerning child exploitation and child pornography.  As demonstrated by his attached curriculum vitae, he was assigned to the FBI's Behavioral Science Unit for more than 15 years and continues to study, research, teach and testify

in the area of child exploitation and pornography.

### Mr. Lanning's Proposed Testimony

The practices of those involved in child exploitation and pornography are thankfully foreign to the average jury. Rather than financial gain, people involved in this criminal activity typically seek to collect and share child pornography, and seek validation and approval from other with similar criminal interests. It is important for the jury to understand the motivation and practices of this criminal sub-culture so that the defendant's actions in this case can be understood. Here the defendant did not seek to sell the photos; his motivation was to distribute and collect. Mr. Lanning's testimony will explain that motivations and practices of those involved in this activity. Mr. Lanning has prepared a powerpoint presentation (which was disclosed several weeks ago) to help explain his testimony. Images from that presentation are attached. Mr. Lanning will also interpret the meaning of the strange jargon that the defendant used in his email.

### Cases In Which Mr. Lanning Was Allowed To Testify

The Court directed the government to submit cases in which Mr. Lanning was allowed to testify as an expert witness. As demonstrated below Mr. Lanning has been allowed to testify on numerous occasions as an expert in the area of child exploitation/child pornography.

As a general matter, Mr. Lanning has been allowed to provide educational testimony about the generic characteristics of child molesters and pornographers. His "situational vs. preferential" model of child abuser behavior is generally allowed. In at least one case he was allowed to testify about the particular meaning of a specific child pornography term.

In United States v. Cross, 928 F.2d 1030 (11th Cir. 1991) Mr. Lanning was permitted to testify that the materials the defendant collected would be of interest to pedophiles and that they were obscene pictures intended for sexual gratification. He testified about the various types of materials that pedophiles collect, including materials of a less explicit nature that the jurors may not have known could be used for sexual gratification.

Even more importantly, the court upheld the trial court's admittance of testimony about the meaning of the term "nude studies". This decision clearly supports the government's position that the jury must be made aware of the specific meaning of terminology used in this context. As the Court reasoned:

Such evidence clearly shed light on one of the critical issues in the case -- whether Cross obtained the photos with the intention of using them to produce and distribute child pornography. Indeed, federal courts have ordinarily allowed law enforcement officials "to testify as experts . . . to establish the *modus operandi* of particular crimes," in order to "explain the actions of the defendants." Id. at 1049.

Lanning also indicated that, in communicating with one another, pedophiles often employ the term, "nude studies" -- a phrase repeated in Cross's letters -- as a "code word," to refer to such non-obscene photographs of children. See United States v.

4

Alfonso, 552 F.2d 605 (5th Cir.) (appropriate to allow expert in gambling to testify with respect to meaning of "gambling jargon" contained in recorded telephone conversations), cert. denied, 434 U.S. 857, 98 S. Ct. 179, 54 L. Ed. 2d 129 (1977). <u>Furthermore, his testimony regarding the obsession of pedophiles with exchanging stories and photographs with a network of others who share their sexual interest in children helped to explain the genesis and odd character of appellants' relationship, particularly the fact that they had cooperated in a complex, risky, criminal conspiracy although they had never met and knew little about one another.</u>  <u>Id</u>. at 1049 n65 [emphasis supplied].

    In <u>United States v. Davenport</u>, 2005 U.S. App. LEXIS 22037 at * 1 (7th Cir. 2005), the Seventh Circuit stated that it is acceptable for Mr. Lanning to testify about the ways in which child sex offenders use the internet to achieve their aims, and the court specifically endorsed the proposition that testimony about "how pedophiles use the internet to exploit children" should be admitted.  This demonstrates the importance of allowing jurors access to knowledgeable expert testimony concerning the modus operandi of child abusers and shows that Mr. Lanning is competent to proved such testimony.

    In <u>United States v. Romero</u>, 189 F.3d 576 (7th Cir. 2005) Mr. Lanning was allowed to testify and the conviction was affirmed. In its opinion the Seventh Circuit discussed the contours of expert testimony.  The Court reemphasized that Rule 704(b) prohibits a witness from speculating on the defendant's state of mind or intention.  The district court Judge expressed concern admitting testimony from Mr. Lanning about the defendants "interests", and thus the government limited his testimony to

hypotheticals and did not specifically ask for comment on the defendant.

On appeal, the court allowed Mr. Lanning's hypothetical testimony to stand; acknowledging that this type of testimony can raise 704(B) questions but finding that it was within the district courts discretion to admit this evidence:

The prosecution proposed to have Agent Lanning testify regarding (1) characteristics or "preferential" child molesters and the methods they used to attract and abuse children; and his opinion that Romero is a child molester with an interest in adolescent boys  Id. at 582.

In response to the defense arguments, the government offered that it would limit Lanning's testimony to the methods and techniques employed by preferential child molesters.  Id. at 582.

The prosecution posed a series of hypothetical actions to Lanning and asked him if these actions would indicate someone who would act on his sexual fantasies about children.  Not surprisingly, the hypotheticals described actions taken by Romero. Id. at 584.

Of course the testimony in Romero is far beyond the basic, and widely accepted expert testimony that the government intends to offer in this case.  However, this shows the great confidence that courts have shown to Mr. Lanning's testimony, more confidence than is required from the Court in this case.

In United States v. Hayward, 359 F.3d 631, 636 (3rd Cir. 2004) Mr. Lanning was allowed to testify about the methods and practices of "acquaintance child molesters."  He was limited from commenting on the specific defendant or answering questions designed to elicit an opinion as to the specific defendant's

6

intentions, something that we will not be asking Mr. Lanning to do in this case:

The district court judge limited Lanning's testimony to "acquaintance child molesters' pattern of activity" and prohibited Lanning from testifying as to Hayward himself or Hayward's intent <u>Id</u>. at 636.

Lanning never directly opined as to [Hayward's] mental state when he [returned to the hotel room with the cheerleaders. Rather, Lanning "focused primarily on the modus operandi – on the actions normally taken by child molesters to find and seduce their victims." <u>Id</u>. at 636.

What can be taken from these cases, and from the many other cases that are reflected on Mr. Lanning's CV, is that Mr. Lanning has been widely accepted as an expert witness in the area of child exploitation and child pornography.  The concerns voiced and limitations placed on the Mr. Lanning will not be an issue in this case because of the manner in which the government will present his testimony.  The government will not ask him to opine about the defendant's "intent" or use hypotheticals to indirectly elicit such testimony.  Instead the government will ask him to opine about the motivations and practices of people involved in child exploitation and child pornography.  The purpose of the testimony is to help the jury understand the strange world the defendant inhabited where collecting and sharing and validation are far more important than financial gain.

<u>Cases That Support Mr. Lanning's Testimony Regarding The Email</u>

Regarding the unusual language the defendant used in his

email, Mr. Lanning first will explain that the language is consistent with the offering of child pornography. After explaining the concept of a "series" of images, he will testify that use of the word "fills" is consistent with a request for for additional, similar images of the same victims.

As noted above, Mr. Lanning has testified about the meaning of particular terms within the child abuser subculture before. His explanation of the specific meaning of the term "nude studies" in <u>Cross</u> was essential the fact finders understanding of the communications between the defendants. The appellate court found allowing this testimony so unproblematic that it affirmed its admittance in a footnote. <u>Cross</u>, 928 F.2d 1030, 1049 n65.

The government's formulation is almost verbatim of the language this Court allowed and which was approved by the First Circuit. In <u>United States v. Pina</u>, 138 Fed. Appx. 336 (1st Cir. 2005):

The drug expert was then asked to give his opinion. It was his opinion that the items found in the apartment, the crack cocaine, the scales, the baggies and the packages of cases, with consistent with drug trafficking. <u>Id</u>. at 338. (citations omitted)

This "consistent with" language has been approved in drug and gambling cases to help the jury understand the particular jargon in those areas. Of course the reason this testimony is allowed is that the typical, lay juror who is a law abiding citizen is unfamiliar with the practices of narcotics traffickers and will be unable to determine the intended meaning behind the

8

words used.  Expert testimony is essential to allow the jury to fulfill its role.

In United States v. Hoffman, 832 F.2d 1299 (1st Cir. 1987) the government presented recorded conversations between the defendants.  The conversations contained numerous terms and phrases that had particular meanings within the narcotics subculture which the ordinary juror would not understand.  The Court allowed expert testimony to explain to the jury exactly what the substance of the conversation meant.  This case is a perfect example of the accepted practice of admitting qualified expert testimony concerning the lingo of drug dealers in narcotics trafficking in the First Circuit.

The United States presented a DEA agent, Assarian, to clarify the meaning of the conversations….The district court found that Assarian possessed "specialized knowledge" about the drug trade as would assist the jury in deciphering the intercepted conversations, both defining works such as "rock" and "fluff". Therefore, Assarian was allowed to state his opinion as to the meaning of these otherwise obscure phrases.  Id. at 1310

In United States v. Ladd, 995 F.2d 954 (1st Cir. 1989), the court allowed an expert to testify that the equipment that the defendant possessed and the way in which it was used is consistent with drug trafficking and not mere possession or personal use.  This demonstrates that the "consistent with" formulation can extend from mere language to behavior when the ordinary juror will need expert testimony to understand the implications of the activities presented.

[J]urors are not expected to be familiar with the idiom and workings of the heroin community.  Expert interpretation of drug jargon and practices, supplied by one versed in the business, has often been admitted to assist the trier of fact in drug-trafficking cases.  Id. at 960. (citations omitted).

Obviously, the same can be said of the "community" at issue in this case.

United States v. Alfonso, 552 F2d. 605 (5th Cir. 1977) was a gambling case in which the court expert testimony regarding gambling jargon for the same reasons that testimony about drug jargon is typically allowed:

Philip Harker, who was qualified as an expert in bookmaking and gambling, testified with respect to the meaning of gambling jargon contained in intercepted telephone conversations and the role of the appellants in the gambling operation. Appellants argue that this testimony wrongly invaded ultimate issues of fact to be determined by the jury. By reason of the cryptic nature of the recorded conversations, often framed in jargon peculiar to the gambling trade, it was appropriate to present expert testimony to supply meaning to the conversations and explain the roles of the appellants. Id. at 618.

The Alfonso Court approved testimony beyond what the government proposes to elicit in this case.  Here Mr. Lanning will testify about the motivations and practices of those involved in child exploitation/child pornography without concluding that the defendant was involved, and after some preliminary explanation, will simply state that the language the defendant used is "consistent with" an effort to offer and solicit child pornography.

## Conclusion

The government respectfully requests that the Court allow Mr. Lanning to give his proposed testimony.  Mr. Lanning is widely accepted as an expert in this area and the type of proposed testimony has been repeatedly admitted.

                                    Respectfully submitted,

                                    MICHAEL J. SULLIVAN
                                  United States Attorney

By:   /s/ George W. Vien
       George W. Vien
       Assistant U.S. Attorney
       Sara Gottovi
       Trial Attorney