UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
          v.                )    Cr. NO.: 03-10366-PBS
                            )
GIRARD LAFORTUNE            )

GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorneys, submits this Memorandum regarding sentencing.  The government believes that the defendant's Guideline Range is 360 months to life.  As explained below, the government respectfully requests that the Court impose a sentence of life.

> 1.    Lafortune continues to pose a serious threat to the safety of children in the community.

Gerard Lafortune is a predatory pedophile who has repeatedly abused and exploited children, including his own son and daughter.  Despite prior periods of incarceration as well as years of therapy, Lafortune continues to pose a serious threat to the safety of children.  Lafortune's history, as summarized below, demonstrates his inability or unwillingness to refrain from acting upon his sexual interest in children.  Because of his crimes and the ongoing threat Lafortune poses, the government urges the Court to impose a sentence of life in prison, the only sentence that will insure Lafortune never again has access to children, or to the means by which to exploit them.

Lafortune began abusing children when he was fourteen years old.  As the pre-sentence report ("PSR") indicates, Lafortune admitted that, starting at age fourteen, he began sexually

1

abusing his younger sister and two of his male cousins by repeatedly placing his penis between their legs from behind and "humping" them until he reached orgasm. PSR ¶84.  Lafortune stated that he did not consider this conduct to be abusive; rather, he described such incidents as "sex games" between children. Id.  Lafortune admitted that the abuse of his younger sister continued even after he married. Id.

Then, between 1985 and 1987, defendant sexually abused his biological son and daughter, both of whom were under sixteen years old. PSR ¶47, 85.  Lafortune forced his children to engage in sexual activity with him. Id.  Although he ultimately pled guilty to criminal charges brought against him, counseling records show that Lafortune maintained his innocence, claiming that his ex-wife forced the children to fabricate the allegations and that he pled guilty to protect his children from the pain of having to testify. PSR ¶47.

The defendant's claims that he is innocence of these rapes are lies.  Not only did he plead guilty to the charges (PSR ¶47), and been diagnosed as a "predatory pedophile" (PSR ¶89), but at the time of his arrest in this case, he admitted to the FBI that he molested his own daughter.  See Exhibit 1 (FBI 302 Report, Date of Investigation 10/29/03).  Page three of that Report reads in part: "LaFortune stated that his daughter [name and identifying information deleted] who is now deceased, having been murdered[,] was one of his victims.  Lafortune sexually assaulted his daughter when she was nine and felt ashamed as a result."

Later in the Report, also on page three, the defendant again admitted the crime: "Lafortune stated that he has not had any physical contact with children since the assault of his daughter."

Lafortune received prison time and sex offender treatment after the conviction for abusing his own children. PSR ¶47. But by 1992 he was out of prison, back on the street, and again exploiting children. PSR ¶48. Lafortune placed an ad in *Bargain Hunter's Guide*, soliciting hardcore pornography depicting very young female subjects engaged in sexually explicit conduct. PSR ¶48. Postal Inspectors observed the advertisement, arranged a controlled delivery, arrested Lafortune, and recovered photographs of a young girl engaged in sexually explicit conduct from his home. Id. Lafortune pled guilty in federal court to advertising and receipt of child pornography. Id.

While incarcerated at FCI Butner, Lafortune completed the Sex Offender Treatment Program. Id. Upon his release, Dr. Norris of the Sex Offender Treatment Program reported that Lafortune continued to show signs of sexual arousal around young females, and recommended that Lafortune not be left alone with minor children. PSR ¶89. While on supervised release, Lafortune continued to participate in a sex offender treatment group. PSR ¶48.

In 2002, Lafortune was investigated because the FBI determined that he was a member of the Candyman Yahoo! Group, an e-group dedicated to trading child pornography. See Exhibit 2,

FBI 302 Report, Date of investigation 6/20/02. The FBI and local police interviewed Lafortune, but Lafortune did not voluntarily provide his computer, and no charges were filed against him at that time. Id.

Despite this visit by law enforcement officers, less than a year later, in May 2003, Lafortune was identified as a member of another Yahoo! Group, "baldy3", which was also dedicated to trading child pornography. PSR ¶14-16. As the Court is well aware, his participation in this e-group led to the charges in the instant case. At the time of his arrest in this case, Lafortune admitted that he remained sexually attracted to girls between the ages of 10 and 14 and that he used the internet to satisfy his sexual urges. Exhibit 1 at 3.

In addition to the conduct underlying the instant convictions, agents discovered that Lafortune had engaged in online chats with other predators, seeking to trade the most offensive pictures imaginable, including pictures of four or five year old girls being raped. See Exhibit 3 (A portion of an online chat seized from Lafortune's computer. Lafortune used the name: "singledadrus.") He also begged another online pedophile, who raped his own daughter, to share pornographic photos of her being raped, and to put the child on the web camera so Lafortune could see her. See Exhibit 4 (A portion of an online chat seized from Lafortune's computer.) Lafortune also shared his thoughts on gaining access to real children. For instance, asking during another online chat "anykids hang around there?" and advising

4

"you got to find a ni[]ce woman with a kid." See Exhibit 5 (A
portion of a Lafortune's side of an online chat captured on his
computer.)  This conduct, which occurred contemporaneously with
the charged offenses, demonstrates Lafortune's attempts to have
new child pornography produced for his pleasure.

Lafortune's history, therefore, clearly shows that he is a
predatory pedophile who continues to pose a threat to children.
Indeed, repeated incarceration and years of therapy have not
deterred Lafortune from exploiting children to satisfy his sexual
desires.

2.   Trafficking in child pornography fuels the
     victimization of children.

Trafficking in child pornography is not a victimless crime.
Each child whose image the defendant traded, collected, viewed
and stored on his computer was a victim.  The defendant's
interest in trading pictures with others and viewing children
posing nude, in sexually explicit positions, or actually engaged
in sexual activity, is an interest that our society should not
tolerate because it causes innocent children to be victimized and
abused by those who create the images and those who view them.

In New York v. Ferber, the Supreme Court held that child
pornography is not entitled to First Amendment protection. See
New York v. Ferber, 458 U.S. 747 (1982).  In reaching its
holding, the Court discussed the harm pornography causes:

     Pornography poses an even greater threat to the child
     victim than does sexual abuse or prostitution.
     Because  the  child's  actions  are  reduced  to  a
     recording,  the  pornography  may  haunt  him  in  future

5

years, long after the original misdeed took place.
A child who has posed for a camera must go through
life knowing that the recording is circulating within
the mass distribution system for child pornography.

Ferber, 458 U.S at 760, n. 10 (quoting Shouvlin, Preventing the

Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.

Rev. 535, 545 (1981)).

The Court also discussed the need to target not just the

producers of such material, but also the advertisers to control

the child pornography industry.   The Court explained:

The distribution of photographs and films depicting
sexual activity by juveniles is intrinsically related
to the sexual abuse of children in at least two ways.
First, the materials produced are a permanent record
of the children's participation and the harm to the
child is exacerbated by their circulation.  Second,
the distribution network for child pornography must
be closed if the production of material which
requires the sexual exploitation of children is to be
effectively controlled.  Indeed, there is no serious
contention that the legislature was unjustified in
believing that it is difficult, if not impossible, to
halt the exploitation of children by pursuing only
those who produce the photographs and movies . . . .
The most expeditious if not the only practical method
of law enforcement may be to dry up the market for
this material by imposing severe criminal penalties
on persons selling, advertising, or otherwise
promoting this product.

Ferber, 458 U.S. at 759.

Lafortune's conduct throughout his life demonstrates his

interest in not merely viewing, but also promoting and seeking the

production of, child pornography.  His conduct has contributed to

the continued victimization of children around the world.

Incarceration and therapy have not deterred Lafortune from

continuing to seek sexual gratification from child pornography,

6

thereby continuing to fuel the pornography market and concomitant victimization of children.

It is difficult to imagine the impact on these children of being raped and sexually exploited. How is that impact worsened when the child knows that photos of her victimization are circulated around the world and "enjoyed" by people such as the defendant? The bottom line is that Lafortune has been given multiple opportunities, including professional counseling unavailable to many law abiding Americans. He has refused to

change. For his crimes, and to protect his past and potential future victims, the defendant should be sentenced to life in prison.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ George W. Vien
George W. Vien
Assistant U.S. Attorney
Darcy Katzin
Trial Attorney
U.S. Department of Justice

Dated: January 20, 2006