```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA        )
                                )
                                )
      v.                        )     CRIMINAL NO. 03-10366-PBS
                                )
                                )
GIRARD LAFORTUNE                )
```

MEMORANDUM IN AID OF SENTENCING

The defendant Girard Lafortune, through undersigned counsel, respectfully submits this memorandum in aid of sentencing in the above-captioned case.

Objections To The Guidelines

Mr. Lafortune states two objections to the revised guidelines calculations. The first relates to ¶36A, which enhances his offense level by 4 levels pursuant to USSG §2G2.2(b)(3) because the material "portrayed sadistic or masochistic conduct." Lafortune objects because he did not acknowledge that he possessed or received sadistic images during the course of his plea colloquy on counts 2 and 3; the images involved in count 1 did not involve sadistic or masochistic images. In other words, Lafortune raises a Sixth Amendment /*Apprendi* objection to this enhancement.

The PSR states that the factual basis for the enhancement is that Lafortune possessed images which showed minor girls being

1

penetrated by adult men.  While there is law in other circuits creating a per se rule that penetration of a child by an adult is inherently sadistic, see, e.g., United States v. Diaz, 368 F.3d 991 (8th Cir. 2004), there is no such law in this circuit. Moreover, the Eleventh Circuit, in a post-*Booker* opinion, reversed a sentence enhancement based on a judicial finding that child pornography images portrayed sadistic content, where the defendant had not expressly admitted this fact during his guilty plea.  See United States v. Love, 2005 U.S.App. LEXIS 8240 (11th Cir. 2005).

Lafortune's next objection relates to ¶39 of the PSR, which alleges that the offenses involved in excess of 600 images; USSG §2G2.2(b)(6)(D).  This objection is also based on Sixth Amendment and *Apprendi* principles.  During the course of his guilty plea, Lafortune acknowledged possessing in excess of 100 images, namely, those found on the "holly n rim" CD; Rule 11 Tr., pp. 41-42.  He did not admit to possessing a greater number of pornographic images.  Therefore, ¶39 of the PSR should set out a 2-level enhancement, and not a 5-level enhancement.  In sum, Lafortune submits that his total adjusted offense level should be 33, not 40.

### *Apprendi*-Based Objections

The PSR states at ¶106 that the applicable mandatory minimum sentence in this case is 420 months.  This is based on the

operation of 18 U.S.C. §2251(e), which calls for the imposition of a 35-year minimum mandatory sentence on persons convicted of violating §2251(d)(1)(A) "if such person has 2 or more prior convictions under this chapter . . . or under the laws of any State relating to the sexual exploitation of children." Lafortune submits that the court cannot impose a sentence exceeding 30 years, the statutory maximum under 18 U.S.C. §2251, where the indictment in this case did not allege his prior convictions.  Though Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219 (1998), purported to authorize a court to impose a sentence under 8 U.S.C. §1326(b)(2) in excess of the default statutory maximum where there had been no express indictment for deportation after conviction for an aggravated felony by treating subsection (b)(2) of the statute as setting forth a mere sentencing factor, Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), subsequently made clear that so-called "sentencing factors" cannot be distinguished from elements of a crime for constitutional purposes:

> Any possible distinction between an "element" of a felony offense and a "sentencing factor" was unknown to the practice of criminal indictment, trial by jury, and judgment by court as it existed during the years surrounding our Nation's founding.
>
> . . . .
>
> This practice at common law held true when indictments were issued pursuant to statute.  Just as circumstances of the crime and the intent of the defendant at the time of commission were often

> essential elements to be alleged in the indictment, so too were the circumstances mandating a particular punishment. "Where a statute annexes a higher degree of punishment to a common-law felony, if committed under particular circumstances, an indictment for the offence, in order to bring the defendant within that higher degree of punishment, must expressly charge it to have been committed under those circumstances and must state the circumstances with certainty and precision."

120 S.Ct. at 2356-2357. The *Apprendi* Court characterized the decision in Almendarez-Torres as "an exceptional departure from the historic practice that we have described," id. at 2361, and went on to acknowledge that "it is arguable that Almendarez-Torres was incorrectly decided, and that logical application of our reasoning today should apply if the recidivist issue were contested." Id. at 2362.

Lafortune submits he cannot be lawfully sentenced to a term exceeding 30 years on count 4 on this indictment because his prior state and federal convictions were not pled in the indictment. See *Apprendi*, supra, 120 S.Ct. at 2365- 2366; Blakely v. Washington, 124 S.Ct. at 2537: "[o]ur precedents make clear, however, that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* (emphasis in original).[1]

---

[1] "[T]he rule we expressed in Apprendi v. New Jersey . . . reflects two longstanding tenets of common-law jurisprudence ... [one of which is] that 'an accusation which lacks any particular fact which the law makes essential to punishment is . . . no

4

Eighth Amendment Considerations

The clear purpose of the thirty-five year mandatory minimum sentence, aded to 18 U.S.C. § 2251(e), was to punish those who directly exploit children by producing child pornography; its technical application to someone who advertises to trade images is the result of legislative negligence rather than any deliberate policy decision. A review of the statutory scheme and its legislative history show this to be the case. §2251 appears on its face designed to punish different conduct than that engaged in by Mr. Lafortune. §2251 was conceived to punish those who <u>directly</u> exploit children to produce pornography; the later addition of the mandatory minimums was intended to punish more severely such direct exploitation. By contrast, §§2252 and 2252A were intended to punish those who merely receive or distribute materials containing child pornography. The inclusion of all of the "advertising" offenses -- including advertising only for materials -- in the exploitation section, rather than splitting them up between advertising to exploit minors and advertising to receive or send materials, was a mistake, the result of patchwork amendment over the years.

§2251, entitled "Sexual Exploitation of Children," is

---

accusation within the requirements of the common law, and it is no accusation in reason.'" 124 S.Ct. at 2536 (internal citations omitted).

intended to punish the actual producers of child pornography -- those people who put children in front of a camera or who participate in some way in the direct exploitation of actual children.  Thus, 18 U.S.C. §2251(a) punishes any person who "employs, uses, persuades, induces, entices or coerces any minor to engage in or who transports any minor" in commerce in order to produce pornography.  Likewise, 18 U.S.C. 2251(b) punishes "any parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in" the production of child pornography.  And subsection (c) punishes any person who "employs, uses, persuades, induces, entices, or coerces any minor to engage in" sexually explicit conduct outside the United States for the purpose of producing a visual depiction of that conduct.  Even subsection (d), which punishes one who publishes "a notice or advertisement," is directed toward the producers of pornography.  It prohibits advertising that seeks or offers the "participation in any act of sexually explicit conduct by or with any minor for the purpose of producing" child pornography.  18 U.S.C. §2251(d)(1)(B).

    Only §2251(d)(1)(A) could apply to a person who offers or seeks to trade only already-produced copies of child pornography.  It punishes, in the context of a statute clearly designed to punish the actual exploiters of the children, one who "makes, prints, or publishes, or causes to be made, printed, or

published, any notice or advertisement seeking or offering to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction" of child pornography. This is the section that technically could authorize imposing a mandatory minimum thirty-five year term on Mr. Lafortune.

§2252A(a), however, punishes less harshly conduct that on its face is more serious than merely advertising to trade or receive pornography: the actual receipt, distribution, or reproduction of child pornography. This is because the statute that was meant to cover offenses related to trading or distributing child pornography is §2252A(a). Congress intended the stiff mandatory minimum sentences, which were added in 1996, to apply to the actual exploiters of children. In its haste and sloppiness, however, when Congress amended the exploitation section to add the mandatory minimums it neglected to move the offense of advertising for materials to §2252A, to make it clear that the harsh mandatory minimums would not apply to a noncommercial trader who posts a notice offering or soliciting pictures in a chat room.[2]

---

[2] The legislative history of both sections bears this out. Section 2251, the "Exploitation of Children" section, was originally enacted in 1978 "to address the problem of sexual exploitation of children by the use of children as performers in the production of films and photographs depicting sexually explicit conduct." H.R. Rep. 98-5636 *4, reprinted in 1984 U.S.C.C.A.N. 492, 495. In 1983, Congress passed section 2252, the "Materials" section, specifically to "ensure that a person who is a producer of child pornography but who does not have a

7

direct role in inducing a child's participation (for example, a person who buys photos from another, or who prints them from other publications) cannot escape prosecution." Id. at *5, 1984 U.S.C.C.A.N. at 496. This is the precursor of section 2252A. The House Report noted that "Section 2251, the present production offense, seems to require such direct contact." Id. See United States v. X-Citement Video, Inc., 513 U.S. 64, 72 n.5 (1994) (noting the difference between §2251, which criminalizes "pornography production" and §2252, which criminalizes receipt and distribution of materials). Neither section 2251 nor 2252 carried a mandatory minimum sentence.

In 1986, the advertising offenses were enacted by Congress, to prohibit "advertising -- to buy or sell child pornography, to offer or seek children for sex acts for the purpose of producing child pornography or to participate with children in sex acts for the purpose of producing child pornography." H.R. Rep. 99-910, *3, reprinted, in 1986 U.S.C.C.A.N. 5952. Despite the existing distinction between direct exploitation offenses and materials offenses, the advertising offenses were simply lumped together into subsection (c) of §2251. There was no explanation for this in the report, nor any discussion of it in the legislative history. H.R. Rep. 99-910, *3-*7; 1986 U.S.C.C.A.N. at 5952-5957. At this time, there was no mandatory minimum sentence, so the misplacement of the advertising for materials offense in the exploitation of children section did not have serious consequences.

That changed in 1996 when § 2251, the "Sexual Exploitation of Children" section, was amended to include the ten-year minimum. 18 U.S.C. §2251(d). The ten-year mandatory minimum penalty for exploitation offenses was added as an amendment to the 1996 "Child Pornography Prevention Act." See, S. Rep. 104-358, 1996 WL 506545. The principle purpose of this act was to establish a new offense of distribution, reproduction, receipt, etc. of computer-generated -- "virtual" -- child pornography. S. Rep. 104-358 at *7-*8, 1996 WL 506545 at 9-10. The new section, §2252A, paralleled §2252 but included a prohibition of "virtual" pornography. It set forth a sentencing range of 0 to 15 years, with a 5-year mandatory sentence required only where defendant had previously been convicted of an offense "relating to the production, receipt, or distribution of child pornography." Id. S. Rep. 104-358 at *5-*6, 1996 WL 506545 at 7-8.

In an amendment to this bill, Congress also increased the existing penalties for §2251, the "Exploitation of Children" section. The legislative history of this amendment makes clear that the mandatory minimum sentencing scheme was intended to apply to those who directly exploit children. With respect to

8

---

Section 5, the only section dealing with §2251, the Senate Report stated: "This section amends 18 U.S.C. §2251(d) to increase the penalties for <u>sexual exploitation of children</u>."  S. Rep. 104-358 at *9, 1996 WL 506545 at 12 (Section by Section Analysis) (emphasis added).  It then set forth the new mandatory minimum of 10 years, the increased minimum penalties for those with "prior convictions relating to the sexual exploitation of children" and the life imprisonment or death penalty provisions if the offense resulted in a death.

When Congress amended §2251 in 2003 and increased the mandatory minimum from 10 to 15 years, it reiterated its intention for this section to apply only to direct exploitation offenses and in fact emphasized this: "This section increases the mandatory minimum penalties for <u>only</u> the most serious crimes of sexual abuse and sexual exploitation."  H.R. Conf. Rep. 108-66, *49; 2003 U.S.S.C.C.A.N. 683, **684. (Section by Section Analysis, Sec. 103)(emphasis added).

Clearly, this section was meant to deal harshly with those who are directly involved in exploiting children to create child pornography.  In the "Discussion" of the pre-2003 mandatory minimums of §2251, entitled "Penalties For Sexual Exploitation of Children To Produce Child Pornography," the Senate report stated:

> Section 5 of S.1237 reflects an amendment offered by Senator Grassley, amendment 18 U.S.C. § 2251 to increase the penalties under Federal law for the <u>production of child pornography using actual minors</u>....  The purpose of Senator Grassley's amendment is to toughen Federal penalties for the <u>sexual exploitation of children to produce child pornography</u>....

S. Rep. 104-358 at *22, 1996 WL 506545 at 24.  On the Senate floor, Senator Grassley himself, the author and proponent of the amendment, described it as "an amendment which would create a three-strikes-and you're out penalty structure for <u>the production of child pornography</u>."  142 Cong. Rec. S11285-01 (emphasis added).

In sum, Congress never intended for the harsh mandatory minimum sentences set forth in §2251 to apply to those who merely reproduce materials containing child pornography or advertise to trade or receive such materials.  When Congress acted to prohibit "advertising" to trade as well as trading, it simply stuck all of the advertising offenses in an existing section of the criminal code.  In its haste, it neglected to preserve the distinction between the direct exploitation offenses (§2251) and the

9

### Eighth Amendment Considerations

The imposition of a thirty-five year minimum sentence on Mr. Lafortune for posting a notice in a Yahoo group would be draconian and unjust. The Cruel and Unusual Punishment Clause of the Eighth Amendment prohibits "'greatly disproportioned' sentences." Harmelin v. Michigan, 501 U.S. 957, 997 (1991) (Kennedy, J. concurring), quoting Weems v. United States, 217 U.S. 349, 371 (1910). As a threshold matter, this court must analyze Congress's intent in creating this sentencing scheme. In this instance, very little deference is owed to the Congress, where the conduct prohibited by subsection (d)(1)(A) was included within the rest of this statute, and thus made subject to these very high penalties, by a sheer oversight.

A thirty-five year mandatory minimum sentence for advertising or soliciting any kind of documentary material is far out of line with the federal sentencing structure. The federal sentencing scheme, like other schemes, uses mandatory minimums primarily to punish recidivists severely. Thus, a mandatory minimum sentence of 15 years applies to an "armed career

---

materials offenses (§§ 2252 and 2252A), and failed to split up the offenses of advertising for live children and advertising for materials. Later, when Congress increased the penalties for direct exploitation of children, it simply added the mandatory minimum to the entire "Exploitation" section which, apparently unknown to the sponsor, still inadvertently carried the offense of advertising materials.

criminal." This only applies to a felon in possession of a firearm who "has <u>three previous convictions</u> ... for a <u>violent</u> felony or <u>serious drug</u> offense" committed on different occasions. 18 U.S.C. §§ 922(g), 924(e) (emphasis added). Likewise, mandatory minimum sentencing for narcotics distribution, as modified by the "safety valve," is essentially limited to recidivists. The drug trafficking offenses of 21 U.S.C. § 841(b) carry mandatory minimum sentences, triggered by minimum quantities of narcotics. The threshold quantity for a ten-year mandatory minimum is five kilograms of cocaine or one kilogram of heroin -- very large quantities of narcotics. 21 U.S.C. § 841(a). In 1994, however, Congress enacted the "safety valve" provision to ameliorate a sentencing scheme considered too harsh. 18 U.S.C. § 3553(f) (2000). This eliminated the mandatory minimum for a first-time offender who did not use violence in connection with the offense and who was not an organizer or leader of the criminal activity. 18 U.S.C. § 3553.

Outside of the recidivism context, mandatory minimums are rare and reserved for extremely serious or violent crimes like first-degree murder and being the leader of a continuing criminal narcotics enterprise. 18 U.S.C. § 1111; 21 U.S.C. § 548. Indeed, except for these very serious crimes which carry mandatory minimums of life imprisonment, they hardly exist. Voluntary manslaughter carries a maximum of 10 years, and no

minimum penalty.  18 U.S.C. § 1112.  Violent crimes in aid of racketeering, other than murder, carry no minimum penalty.  18 U.S.C. § 1959.  Assaulting a federal officer, even with a deadly weapon, carries a maximum of 10 years and no minimum.  18 U.S.C. § 111.  One who conspires or attempts to commit murder for hire only faces a maximum of ten years and no minimum.  18 U.S.C. § 1958.[3]

Significantly, the offenses of sexual abuse of children carry no mandatory minimum sentence, except in cases of recidivism for the same type of offense.  18 U.S.C. § 2241, 2243, 2244.  Even kidnapping a child for ransom carries no mandatory minimum sentence, unless death results.  18 U.S.C. § 1201.

In the context of the federal sentencing scheme, these mandatory minimums penalties of 15 years for the actual exploitation of children to produce pornography and 30 years for the sale or purchase of children for such purpose are very severe.  18 U.S.C. § 2251, 2251A.  However, Congress has made a

---

[3] The offenses of destruction of aircraft (even where it endangers the safety of an aircraft in flight) and violence at an airport carry no mandatory minimum unless a death results.  18 U.S.C. § 32-37.  Trading in biological weapons carries a maximum of ten years, but no mandatory minimum.  18 U.S.C. § 1756. Gathering, transmitting, or even delivering to a foreign government defense information does not carry a mandatory minimum sentence, 18 U.S.C. §§ 793, 794, nor does unauthorized use of or threatening to use nuclear materials.  18 U.S.C. § 831.  Even commission of terrorist acts carries no mandatory minimum penalty, unless death results.  18 U.S.C. § 2332(b).

considered policy choice to protect actual children from exploitation by punishing harshly those <u>directly</u> involved in the use of children to produce pornography.  As discussed above, however, no such considered policy judgment was made with respect to advertising to trade or solicit materials containing child pornography.  Nor would such a judgment have made any sense.  The mandatory application of a 35-year minimum sentence -- with no ability to consider the defendant's background or other mitigating facts -- to a trader of pornographic materials who had no contact with children would be grossly disproportionate within the federal sentencing scheme.[4]

Similarly, comparison of the sentence mandated by 18 U.S.C. § 2251(d)(1)(A) for advertising to trade or solicit child pornography with state law sentencing regimes for the same conduct shows that the federal mandatory minimums for this activity is grossly disproportionate.  All fifty states have

---

[4] The amendment increasing the mandatory minimum sentence for exploitation offenses under §2251, PROTECT ACT, Sec. 103(b)(1)(A)(i), further demonstrates that this sentence for an advertising materials offense is unjust and unintentional.  The House Conference Report on this act makes absolutely clear once again that the severe mandatory minimum penalties were and are intended to apply only to direct exploitation offenses.  H.R. Conf. Rep. 108-66, *49; 2003 U.S.S.C.C.A.N. 683, **684.  (Section by Section Analysis, Sec. 103 ("this section increases the mandatory minimum penalties for only the most serious crimes of sexual abuse and sexual exploitation")). The inadvertent application of this penalty to the advertising materials offense was simply carried through.

child pornography laws.[5] The majority of these statutes impose sentences of between two and seven years for advertising child pornography in exchange for something of value. For example, South Carolina law punishes the distribution of solicitation of material that contains a visual representation of a minor engaged in sexual activity by imprisonment of "not less than two years nor more than five years." SC Stat. § 16-15-405. California law punishes the advertising of child pornography for "commercial consideration" by imprisonment in the state prison for "two, three, or six years." See Cal. Pen. Code § 311.12(b). Georgia law mandates imprisonment in the state prison for "two, three, or six years." See Cal. Pen. Code § 311.12(b). Georgia law mandates imprisonment of not less than two years for

---

[5] See Ala. Code 1975, §§ 13A-12-190 to 13A-12-198; AS 11.41.455; A.R.S. § 13-3553; A.C.A. §§ 5-27-301 to 5-27-305; West's Ann. Cal. Penal Code §§ 311 to 311.11; West's C.R.S.A. § 18-6-403; C.G.S.A. §§ 53a-196 to 53a-196b; 11 Del.C. §§ 1108, 1109; West's F.S.A. 827.071; O.C.G.A. § 16-12-100; HRS §§ 707-750, 707-751; I.C. § 44-1306; 720 Ill. Comp. Stat. Ann. 5/11-20.1; West's A.I.C. 35-49-1-1 to 35-49-1-10; I.C.A. § 728.12; K.S.A. 21-3516; KRS 531.320, 531.340 to 531.360; LSA-R.S. 14L81.1; 17 M.R.S.A. §§ 2921 to 2923; Md. Code 1957, art. 27, § 419A; M.G.L.A. c. 272, §§ 29A, 29B; M.C.L.A. § 750.145c; M.S.A. § 617.426; Miss. Code 1972, § 97-5-33; V.A.M.S. § 568.060; MCA 45-5-625; Neb. R.R.S. 1943, § 28-1463; N.R.S. 20.70 to 200.760; N.H. RSA 650:2; N.J.S.A. 2C:24-4(b)(5); NMSA 1978, § 30-6-1; N.Y. Penal Law §§ 263.00-.25; N.C.G.S. § 14-190.6; NDCC 12.1-27.1-01; Ohio R.C. § 2907.32.1; 21 Okl.St.Ann. § 1021.2; ORS 163.485; 18 Pa.C.S.A. § 6312(c); R.I. Gen. Laws 1956, § 11-9-1.1; S.C. Code Ann. § 16-15-405; SDCL 22-22-24, 22-22-, 25; T.C.A. §§ 39-17-911, 39-17-914; U.C.A. 1953, 76-5a-1 to 76-5a-4; Va. Code 1950, § 18.2-374-1; Vt. Stat. Ann. Tit. Xiii, §§ 2821-2826; West's RCWA 9.68A.060; W.Va. Code, 61-8C-3; W.S.A. 948.05; Wyo. Stat. Ann., § 27-6-114.

advertisement or exchange of not less than two years for advertisement or exchange of any material which depicts a minor engaged in any sexually explicit conduct.  <u>See</u> Ga. Code Ann. § 16-12-100.  New Jersey law punishes advertising and distribution of child pornography by imprisonment for a term of five to 10 years.  <u>See</u> NJ St. § 2C:24-4.  Indeed, a number of the state statutes have a ten year <u>maximum</u> term of imprisonment.  <u>See</u>, <u>e.g.</u>, <u>id.</u>; La. R.S. 14: 81.1E.  Defense counsel found no state that imposes a mandatory minimum sentence of more than five years for the advertisement of child pornography.

Application of the proportionality principles relevant to review of a federal sentence leads to the conclusion that the imposition of a thirty-five year mandatory prison term on Mr. Lafortune would violate the Eighth Amendment's prohibition against Cruel and Unusual Punishment.

```
                                    GIRARD LAFORTUNE
                                    By his attorney,

                                    /s/ Syrie D. Fried

                                    Syrie D. Fried
                                       B.B.O. # 555815
                                    Federal Defender Office
                                    408 Atlantic Avenue, 3rd Floor
                                    Boston, MA  02110
                                    Tel: 617-223-8061
```

CERTIFICATE OF SERVICE

I, Syrie D. Fried, do hereby certify that this document has been filed electronically and that it will be served electronically to registered ECF participants as identified on the Notice of Electronic Filing (NEF) on March 9, 2006.

/s/ Syrie D. Fried

Syrie D. Fried