# United States Court of Appeals
## For the First Circuit

No. 06-1699

UNITED STATES OF AMERICA,

Appellee,

v.

GIRARD LAFORTUNE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lipez, Circuit Judge,
Cyr, Senior Circuit Judge,
and Howard, Circuit Judge.

Mark T. Quinlivan, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.
Raymond E. Gillespie for the appellant.

March 18, 2008

**LIPEZ, Circuit Judge.**  Following convictions on four child pornography charges, Girard LaFortune appeals from the denial of a motion to suppress challenging the probable cause determination of a magistrate judge who issued a search warrant for LaFortune's residence.  In making that determination, the magistrate judge reviewed an application for a search warrant that included an affidavit from an investigating officer and copies of pornographic images.  LaFortune claims that the affidavit and the accompanying images did not permit the magistrate judge to determine whether the images depicted real children rather than virtual children.  Instead, LaFortune argues, the magistrate judge required the assistance of "informed lay opinion, evidencing some kind of basic technical familiarity with virtual imaging and giving specific reasons why the proffered depictions could readily be ruled out as artificial creations."  Without such assistance, LaFortune argues, the magistrate judge could not make the necessary probable cause determination.  The district court rejected this argument.

LaFortune also appeals the enhancement of his sentence pursuant to 18 U.S.C. § 2251(e), arguing that the enhancement violates his Sixth Amendment rights because a jury did not determine the fact of his prior convictions.  We affirm the convictions and the sentence.

-2-

I.

The facts relevant to the motion to suppress are largely undisputed. In May 2003, Kari Morales Marsh, a Federal Bureau of Investigation agent in the Arizona office of the Innocent Images Task Force, was working undercover on the internet. Marsh was posing as a 38-year-old male who had an interest in pedophilic behavior when she encountered a Yahoo! internet group called "Baldy3," limited to members only. After Marsh was allowed to enter the group, she observed and recorded images that she believed were in violation of statutes prohibiting the making, possessing, and distributing of child pornography. See 18 U.S.C. §§ 2251(a)-(e), 2252.

Among the images Marsh viewed were six images attached to a message posted on May 21, 2003 by a "davyjones20002000." Two of the pictures were of a particular girl called "Holly." The subject line of the message posted by "davyjones20002000" was entitled "As Promised" and read: "[A]dded a few pics in the folder..Holly n Rim. they my two favorites, will post more later, please post fills if u have."[1]

Marsh then sent administrative subpoenas to Yahoo! and Comcast in order to obtain the internet protocol (IP) address connected with "davyjones20002000." This IP address was assigned

---

[1] The government states that Marsh understood the term "fills" as referring to additional pictures that are part of the same series of pictures as the ones that had been posted.

to Comcast customer Girard LaFortune at 80 Allen Road, Billerica, Massachusetts. Marsh sent this information to the FBI office in Lowell, Massachusetts. Thereafter, Special Agent Todd Richards took over the investigation.

By contacting the Department of Motor Vehicles, Richards determined that LaFortune had a Dodge Caravan registered in his name at the 80 Allen Road address. During the week of October 11, 2003, a police officer from the Billerica Police Department observed a Dodge Caravan with the license plate number registered to LaFortune parked in front of 80 Allen Road. Richards also checked the Commonwealth of Massachusetts Sex Offender Registry Board and the records maintained by the FBI. In the Sex Offender Registry, he discovered that LaFortune was registered as a sex offender living at 80 Allen Road.[2] The FBI records revealed that the FBI had interviewed LaFortune in 2002 at this address. During that interview, LaFortune admitted to visiting Yahoo! child pornography groups and using the email address "daveyjones@hotmail.com."[3]

---

[2] In 1987, LaFortune pled guilty in Massachusetts state court to one count of rape of a child in violation of Mass. Gen. Laws ch. 265, § 23 and to one count of assault of a child with the intent to commit rape in violation of Mass. Gen. Laws ch. 265, § 24B. Five years later, LaFortune was convicted in federal court of two counts of sexual exploitation of minors pursuant to 18 U.S.C. § 2252.

[3] On this occasion, the FBI did not seek to prosecute LaFortune.

Using the information detailed above, Richards prepared
an affidavit in support of an application for a search warrant for
80 Allen Road. Richards included in the affidavit a description of
three pictures that "daveyjones20002000" had uploaded to the Yahoo!
group photo album "Holly n Rim." Although Richards characterized
each picture as depicting a prepubescent girl, he did not
explicitly assert that the pictures portrayed real children.[4]
Richards attested that a search of LaFortune's home and computer
would reveal evidence of materials depicting the sexual
exploitation of actual minors in violation of 18 U.S.C. § 2252,
which prohibits knowingly shipping or receiving sexually explicit
materials depicting actual minors. Attached to the affidavit were
copies of the three pictures described in the affidavit.

After reviewing Richards affidavit along with the images
Richards had attached to it, the magistrate judge wrote on the
affidavit on October 27, 2003, "I personally reviewed the
referenced photographs," and signed her name beneath this
statement. She then issued the requested search warrant. On
October 29, 2003, FBI agents and local police executed the search

---

[4] The affidavit states that the first picture "depicts a
prepubescent girl being penetrated by an adult male penis," the
second picture "depicts a prepubescent girl on a bed with her knees
raised to her chest exposing her genitalia," and the third picture
"depicts a prepubescent girl on a bed with her legs spread to
expose her genitalia."

-5-

warrant, seizing a substantial amount of material, including a
laptop, compact discs, digital versatile discs, and video tapes.

While the police were searching the residence on Allen
Road, they interviewed LaFortune, who admitted to viewing child
nudity on the internet frequently, being interested in pictures of
girls between the ages of ten and fourteen, storing pornographic
images on compact discs, and using an email address beginning with
"davyjones20002000." LaFortune also said that he was the sole user
of his laptop. He was then arrested.

On March 31, 2004, a federal grand jury in the District
of Massachusetts indicted LaFortune on four counts: (1)
transportation and attempted transportation of child pornography,
in violation of 18 U.S.C. § 2252(a)(1),(b)(1); (2) receipt of child
pornography, in violation of 18 U.S.C. § 2252(a)(2); (3) possession
of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B); and
(4) printing or publishing a notice or advertisement for child
pornography in violation of 18 U.S.C. § 2251(d).

LaFortune then filed in the district court a motion to
suppress both the items obtained and the statements made during the
search of the home on October 29, 2003. Relying on the Supreme
Court's decision in Ashcroft v. Free Speech Coalition, 535 U.S. 234
(2002), which held on First Amendment grounds that Congress cannot
ban materials depicting sexually explicit conduct by virtual
children rather than by real children, LaFortune argued that a

-6-

magistrate judge must expressly find that the images presented in conjunction with a search warrant application are "actual children" rather than images created exclusively on the computer. Moreover, he contended that the magistrate judge had inadequate information for making a determination that the images were of real children.

The district court denied his motion to suppress. In response to the argument that the magistrate judge had to find explicitly that the images reflected real children, the district court stated that "[d]efendant cites no authority requiring a magistrate to make express findings in issuing a search warrant, either in the child pornography context or in other contexts, where the search might trigger First Amendment protections. Under established case law, the bottom-line probable cause determination is sufficient." With respect to the claim that the magistrate judge had inadequate information to determine that the images depicted real children, the district court was similarly unpersuaded: "Essentially defendant seems to be pressing for a requirement of expert testimony that images depict actual children as a prerequisite to issuing a search warrant. The probable cause standard requires only a fair probability, based on the totality of the circumstances, that evidence of child pornography would be discovered at defendant's residence." The district court concluded that the images attached to the affidavit, which the magistrate judge reviewed, provided that evidence.

On October 27, 2005, without the benefit of a plea agreement, LaFortune pleaded guilty to Counts 2 and 3. Six days later, a jury found LaFortune guilty on Counts 1 and 4. On March 10, 2006, the district court sentenced LaFortune to 420 months of imprisonment, followed by 60 months of supervised release. Since LaFortune was a third-time offender, convicted of advertising child pornography in violation of § 2251(d)(1)(A), 420 months was the mandatory minimum sentence. See 18 U.S.C. § 2251(d)-(e). This sentence was 60 months longer than the maximum term would have been without the sentence enhancement for prior convictions. See 18 U.S.C. § 2251(e).

LaFortune now appeals the district court's decision to deny his motion to suppress, arguing once again that there was no probable cause for the search of his residence and computer. We review the probable cause determination de novo. Ornelas v. United States, 517 U.S. 690, 699 (1996). He also appeals his 420-month sentence, arguing that it violates his right to trial by jury.

**II.**

There is a familiar quality to LaFortune's challenge to the probable cause determination. In arguing that the magistrate judge could not make that determination without the assistance of "informed lay opinion" affirming that the images submitted with the application for a search warrant depicted real children, LaFortune renews an argument that has been made in other child pornography

-8-

cases in this circuit. Regardless of the setting -- a trial, a sentencing proceeding, or an application for a search warrant -- we have rejected the argument that factfinders cannot rely on their own evaluation of the images at issue to determine whether they depict actual or virtual children. In order to understand the argument that LaFortune makes here, we must review some of that history.

We begin with our 1987 decision in United States v. Nolan, 818 F.2d 1015, where we considered for the first time the issue of distinguishing pornographic images that depict actual minors from images depicting virtual minors created by computers. Nolan was convicted of knowingly receiving magazines from Sweden that contained pictures of minors involved in sexually explicit conduct. Id. at 1016. On appeal, he argued that a trier of fact could not find him guilty beyond a reasonable doubt of crimes involving child pornography because the government had not provided testimony from an expert attesting to the use of real children in the making of the images. Id. at 1017. We concluded that determining that the images were photographs and therefore real-life representations of people "lay within the competence of the non-expert factfinder to make from her personal perusal of the pictures." Id. at 1018.

In 2002, as already noted, the Supreme Court struck down provisions of the Child Pornography Prevention Act of 1996 ("CPPA")

in Free Speech Coalition.   The Court held that pornography that depicts virtual children instead of real children is a protected form of speech.   535 U.S. at 251.   Given that decision, the defendant in United States v. Rodriguez-Pacheco, 475 F.3d 434 (1st Cir. 2007), asked us to reconsider the holding of Nolan that the non-expert factfinder could distinguish between images depicting actual and virtual children merely on the basis of a personal examination of the images themselves.   Although Rodriguez-Pacheco had pled guilty to knowingly possessing one or more items containing images depicting sexually explicit conduct by real, minor children, See § 18 U.S.C. § 2252(a)(4)(B), he contested the sentencing allegation that he knowingly possessed at least ten such images.   Rodriguez-Pacheco, 475 F.3d at 437.   If he had possessed that number, he would be subject to a two-level increase in his sentencing guidelines range.   U.S.S.G. § 2G2.4(b)(2) (2002); Rodriguez-Pacheco, 475 F.3d at 437.   Therefore, the issue at sentencing was the number of illegal images he had possessed.   Id.

At the time of the sentencing hearing on September 29, 2004, the government believed that it was bound by our decision in United States v. Hilton, 363 F.3d 58 (1st Cir. 2004) ("Hilton I"), although, in fact, that decision had just been withdrawn on September 27, 2004, the same day as Rodriguez-Pacheco's change of plea hearing.   Rodriguez-Pacheco, 475 F.3d at 437-38 n.2; see also United States v. Hilton, 386 F.3d 13 (1st Cir. 2004) ("Hilton II").

We had said in Hilton I that the factfinder's review of the images in question in a child pornography case was likely to be insufficient to support a conviction for possession of child pornography if the factfinder did not have the benefit of expert opinion as to the reality of the images or a way of establishing the identity of the depicted child. Hilton I, 363 F.3d at 63-64. Unaware that this rule no longer applied, the government offered at Rodriguez-Pacheco's sentencing hearing the testimony of a pediatrician who said that ten of the images in question were of children under the age of eighteen. Rodriguez-Pacheco, 475 F.3d at 437-38. The government also offered the testimony of an FBI image analyst who discussed some of the criteria he used when determining whether the images depicted a real person. Id. at 438. He stressed the importance of examining "how individuals in an image interact with one another," the nature of the "shadows, gravity, and the effect of pressure on a human body," as well as the gradations in "the flesh and muscle tone." Id. at 445. Using these criteria, the image analyst concluded that nine of the ten images at issue were of real, non-virtual children; however, he did not address whether the tenth image depicted a real child. Id. at 438.

Despite this omission,[5] the district court itself applied the criteria identified by the image analyst in determining that the tenth image depicted a real child. Id. The court then concluded that Rodriguez-Pacheco was subject to the sentencing enhancement for knowingly possessing ten or more pornographic images depicting real, minor children. Id.

On appeal, even though Hilton I had now been withdrawn, we still had to deal with Rodriguez-Pacheco's argument that the Supreme Court's 2002 decision in Free Speech Coalition had itself overruled our 1987 decision in Nolan, and hence a factfinder could not distinguish between actual and real children without the benefit of expert opinion testimony or evidence identifying the children depicted. Id. at 440. We rejected that argument. Instead, we held that Free Speech Coalition "did not establish a bright-line rule requiring that the government proffer a specific type of proof to show the use of an actual child" in order to meet its burden of proof at trial or sentencing. Id. (quoting United States v. Irving, 452 F.3d 110, 121 (2d Cir. 2006)). Moreover, we concluded that the Supreme Court's ruling did not limit the vitality of our holding in Nolan that a non-expert trier of fact can determine whether the images in question are of real or virtual

---

[5] This omission may simply have been the result of a government oversight; there was no suggestion in the record that the expert did not have an opinion on the tenth image. Rodriguez-Pacheco, 475 F.3d at 438 n.3.

children without the benefit of expert testimony. See id. ("Since
the Supreme Court did not address the issue before us, and since
the statute as excised survives, our pre-CPPA case law, including
Nolan, survives as well.").[6]  This interpretation was consistent
with our sister circuits' reading of Free Speech Coalition. Id. at
440-41; see, e.g., Irving, 452 F.3d at 119-22 (upholding a
conviction for possession of child pornography where a jury without
the assistance of expert evidence determined that the pornographic
videos in question were of real, not virtual, children); United
States v. Kimler, 335 F.3d 1132, 1142 (10th Cir. 2003)(finding that
Free Speech Coalition does not create "the absolute requirement
that, absent direct evidence of identity, expert testimony is
required to prove that the prohibited images are of real, not
virtual, children").

        After Rodriguez-Pacheco, the question arguably (but
barely) remained whether the rule of Nolan -- that a trier of fact
can determine whether the images at issue in a child pornography
case are of real or virtual children by examining the images
themselves, without the benefit of expert testimony -- also applied
to the probable cause determination of a magistrate judge.   In

_____

[6] Judge Torruella dissented from the majority decision of the
panel. He stated: "It is now beyond scientific dispute that it is
possible to create virtual pornographic images that can only be
detected (with difficulty) by experts. Thus, experts are required
before factfinders can make their findings on this issue."   475
F.3d at 464.

-13-

United States v. Syphers, 426 F.3d 461, 467 (1st Cir. 2005), the pertinent search warrant application included neither copies of the images in question nor "information that would allow a judge to assess independently whether the subjects were actual minors." Nonetheless, we decided that the evidence obtained pursuant to the search warrant should not be excluded because of the good faith exception established in United States v. Leon, 468 U.S. 897, 922 (1984).[7]  Id. at 467-68.  We also said in dicta:

> The best practice is for an applicant seeking a warrant based on images of alleged child pornography to append the images or provide a sufficiently specific description of the images to enable the magistrate judge to determine independently whether they probably depict real children.

Id. at 467 (emphasis added).[8]  There is not a word here about the need of the magistrate judge for opinion testimony of any kind to

---

[7] The warrant, which was issued five months prior to the publication of Free Speech Coalition, comported with the standards at the time of issuance because the pertinent statute criminalized the possession of images which "appeared" to depict minors and the affidavit provided "significant detail in describing the sexual activity depicted in the images."  Syphers, 426 F.3d at 467-68.

[8] This dicta reiterated similar dicta in United States v. Brunette, 256 F.3d 14 (1st Cir. 2001), where we again applied the good faith exception to the exclusionary rule and said the following:

> Ideally copies of [allegedly pornographic images] will be included in all search warrant applications seeking evidence of child pornography crimes.  If copies cannot be feasibly obtained, a detailed description, including the focal point and setting of the image, and pose and attire of the subject, will generally suffice to allow a magistrate judge to make a considered judgment.

Id. at 20.

-14-

support a probable cause determination relating to the presence of child pornography.

Grasping at straws, LaFortune nevertheless asks us to determine whether this dicta in Syphers is good law, in light of our subsequent discussion in Rodriguez-Pacheco of the criteria the FBI analyst applied at the sentencing hearing when he testified that nine of the images at issue depicted real children. LaFortune argues that an application for a search warrant must now include a copy of the images in question and a specific description of the images that "need not amount to expert opinion but should provide some criteria by which a reasonable person exercising common sense could conclude the images depict real children not virtual ones." Drawing on language in Rodriguez-Pacheco, LaFortune says that the factfinder should use "such indicia as skin and muscle tone, eye formation, and the effects of light, shadow, and gravity on the particular form depicted" to distinguish virtual from real children. Although he says expert opinion is not required to apply these criteria, he insists that there must be an application by "informed lay opinion, evidencing some kind of basic technical familiarity with virtual imaging and giving specific reasons why the proffered depictions could readily be ruled out as artificial creations." Finally, LaFortune insists that "the fact that the magistrate personally reviewed the proffered images should not tip the scale in favor of probable cause. The same kind of expertise

was required of her to be able to rule out the virtual in this context. Only the averments in the affidavit may supply her with that expertise."

As we indicated in our earlier discussion of Rodriguez-Pacheco, the expert testimony described by the majority in that case and cited by LaFortune was offered by the government at sentencing only because the government believed at the time that Hilton I was still good law. Rodriguez-Pacheco, 475 F.3d at 437-38. The majority never suggested that such expert opinion testimony was required to support a factfinder's determination that the image at issue depicted real rather than virtual children. Id. at 439, 445. Indeed, the majority specifically rejected the legal proposition that such expert opinion testimony was necessary. Id. at 439-40.

Moreover, the majority in Rodriguez-Pacheco never suggested that, even if an expert witness does not have to offer an opinion to the factfinder that the images at issue depict real children, there still must be testimony from an expert on the criteria that the factfinder should apply in deciding whether those images depict real children. Id. at 445. The majority cited the criteria noted by LaFortune only to respond to an argument made in the dissent that, in the absence of expert testimony, the remaining evidence was insufficient to support the judge's determination that the tenth image at issue in the sentencing proceeding depicted a

-16-

real rather than virtual child. Id. Although the majority concluded that there was sufficient evidence to support the sentencing court's finding that the tenth image depicted a real child,[9] the majority's reference to these criteria in its sufficiency analysis does not mean that expert testimony on these criteria was indispensable to the sufficiency analysis. Indeed, that position would be contrary to the holding of Rodriguez-Pacheco that Nolan remains good law, and hence the factfinder can determine whether the images in question are of real or virtual children without the benefit of expert testimony. Id. at 444-45.

Also, having rejected in Rodriguez-Pacheco the proposition that expert testimony is required to support the determination by a judge at sentencing that the alleged child pornography involves real children rather than virtual children, it would be incongruous for us to adopt such a requirement for the less exacting determination of probable cause. Despite LaFortune's disclaimer, his call for "informed lay opinion" to tell the magistrate judge that the images at issue depict real children, and his insistence that the magistrate judge cannot make this judgment without the assistance of such an opinion, are poorly disguised attempts to circumvent the holdings of Nolan and Rodriguez-Pacheco

_____

[9] In addition, the majority made clear that this particular sufficiency argument had never been made by the defendant and, thus, was waived. Hence, the discussion cited by LaFortune was unnecessary for the decision in Rodriguez-Pacheco and was dicta.

-17-

that the factfinder is permitted to make the real child determination without the benefit of expert testimony.

Contrary to LaFortune's argument, Rodriguez-Pacheco does not contravene the best practice dicta in Syphers, which we now confirm as a holding essential to our decision here:

> The best practice is for an applicant seeking a warrant based on images of alleged child pornography to append the images or provide a sufficiently specific description of the images to enable the magistrate judge to determine independently whether they probably depict real children.

Syphers, 426 F.3d at 467 (emphasis added). By attaching the images in question to the application for a search warrant here, the investigating officers engaged in that best practice.[10]   The magistrate judge then reviewed those images and concluded, in support of the issuance of the search warrant, that there was probable cause to believe that child pornography would be found at LaFortune's residence.   The images themselves provided an appropriate basis for that determination.   Accordingly, the

---

[10] We emphasize the context of this best practice holding -- an application for a search warrant. We do not address here what the best practice might be at a trial or a sentencing proceeding, when the government must establish beyond a reasonable doubt or by a preponderance of the evidence that the images at issue depict real rather than virtual children. Nolan and Rodriguez-Pacheco also do not address that best practice question. Those cases reject any requirement that the government produce expert testimony (whether in the form of an opinion or an account of relevant indicia that the factfinder can apply) to permit the factfinder to determine if the images at issue depict real or virtual children. The images alone may be sufficient to support such a determination. As a matter of good practice, of course, the government can go beyond its exclusive reliance on such evidence if it chooses to do so.

district court properly refused to exclude the evidence of child pornography found at LaFortune's residence and LaFortune's incriminating statements made during the search.

## III.

The maximum sentence for LaFortune's four counts of possession and distribution of child pornography without any enhancement for prior convictions is 360 months. See 18 U.S.C. § 2251(e). However, under 18 U.S.C. § 2251(e), a third-time offender is subject to a minimum of 420 months. LaFortune argues that the enhancement for recidivism as applied to him violates his Sixth Amendment rights because a jury did not decide the fact of his prior convictions. We have consistently rejected this argument in light of Supreme Court precedent. See, e.g., United States v. Matthews, 498 F.3d 25, 36 (1st Cir. 2007); United States v. Richards, 456 F.3d 260, 262 (1st Cir. 2006). We see no reason to revisit this issue.

Affirmed.

-19-